# WILLIAM H. H. HART *vs.* THE STATE OF MARYLAND.

*Constitutional Law—Inter-state Commerce—Police Power—Statute Requiring Carriers to Provide Separate Coaches for White and Colored Persons Invalid so far as Applicable to Inter-state Passengers— Right of Carriers to Make Their Own Regulations.*

A common carrier has the power, in the absence of any statute, to require white and colored passengers to occupy separate coaches, if no discrimination between the two be made.

A statute requiring carriers to furnish separate accommodations for white and colored persons within the State has been held not to be contrary to the Thirteenth and Fourteenth Amendments of the Federal Constitution; and when relating only to travellers within the State such a statute is not a regulation of commerce between the States.

I is within the police power of the State to make reasonable regulations to secure the safety and comfort of passengers on 'inter-state trains while within its borders. But a law requiring white and colored persons to occupy separate coaches while travelling through the State from another State is an interference with, and the regulation of, commerce between the States, which it is not within the police power of the State to make.

The Act of 1904, ch. 109, requires carriers of passengers in the State of Maryland to provide separate cars or compartments of equal convenience for the transportation of white and colored passengers, and directs that passengers of the different races shall occupy the cars to which they are respectively assigned. *Held*, that this statute, in so far as it relates to inter-state passengers is unconstitutional because it involves a regulation of commerce between the States in a matter in which the power of Congress is exclusive.

*Held*, further, that the statute is valid in so far as it applies to passengers whose journeys begin and end within the State, and it must be construed as applying only to such passengers.

A colored person travelling on a through train from Pennsylvania to the District of Columbia cannot be required, under said Act, while passing through the State of Maryland, to occupy a coach set apart for colored persons.

Appeal from the Circuit Court for Cecil County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Henry M. McCullough*, for the appellant.

As indicated by the defendant's plea, he was an inter-state passenger, having purchased a railroad ticket for an entire, continuous and uninterrupted passage on the day and date named in said plea, from New York City, in the State of New York, a point outside of the State of Maryland, through the States of New Jersey, Pennsylvania, Delaware and Maryland, to the city of Washington, in the District of Columbia, a point outside of and beyond the State of Maryland. *Exclusive* power has been conferred upon Congress in respect to the *regulation* of commerce among the several States. *Hall* v. *De Cuir*, 95 U. S. 487; *Bowman* v. *Chicago or Railway Co.*, 125 U. S. 491.

Since the decision in *Hall* v. *De Cuir* there can be no doubt that a State statute requiring the separation of *inter-state* passengers of different colors would be a regulation of inter-state commerce. If, by the statute under consideration it was intended to require that all passengers on railroads should, while within the territorial limits of Maryland, be carried in separate coaches, according to color, without reference to whether their journey lay wholly within the State or was partly without, it comes clearly under the decision of *Hall* v. *De Cuir*. *Louisville & Railway Co.* v. *Mississippi*, 133 U. S. 589; *C. & O. R. Co.* v. *Kentucky*, 179 U. S. 388.

Not only does the Act, both in its title and in its terms, embrace all white or colored passengers carried within the boundaries of the State, without reference to the initial point or terminus of their journey, but it is manifest that the Legislature would never have imposed so useless a burden upon carriers as to require the separation of only such white and colored passengers as should commence and end their journey within the State. For it will be at once seen that if such separation can be constitutionally required only as to domestic travel, then the carriers would only be compelled to separate colored intra-state passengers from the white intra-state passengers. He may with impunity carry together intra-state colored passengers and inter-state white passengers, or intra-state white and inter-state colored passengers.

The object which this statute sought to accomplish was that all passenger traffic *within* the State of Maryland and without reference to whether it originated within or without the State should be conducted upon the uniform policy of a separation of the two races.

For the Court to hold that while this policy cannot be constitutionally carried out with reference to inter-state passengers it should yet be applied to intra-state transportation would be to decide that the Legislature intended it to apply to the limited class if it cannot apply at all.

We submit that there can nowhere be found the evidence of any such intention; that the statute is, therefore, an inseparable one and must fail by reason of its attempt to extend the legislative power of the State of Maryland to subjects which are within the legislative power of the United States only.

*William S. Bryan, Jr., Attorney-General*, for the appellee.

That for a State Legislature, in the exercise of the police power, to require public carriers to provide separate carriages for the transportation of white and colored passengers without difference or discrimination in the quality or convenience of accommodation furnished such white or colored passengers, is not in conflict with either the XIV or XV Amendment to the Federal Constituton, is settled by the highest authority. *Flessy* v. *Fergusson*, 163 U. S. 537; *Ex parte Plessy*, 18 L. R. A. 639.

Nor can it be successfully contended that this Act is in conflict with Art. 1, sec. 8 of the Federal Constitution, because it is a regulation of inter-state commerce. *Pa. R. Co.* v. *Hughes*, 191 U. S. 489; *Crutcher* v. *Kentucky*, 141 U. S. 61.

There are many other decisions of the Supreme Court which recognize the fact that the police regulations of a State which are valid in themselves, and which have a real and substantial relation to any head of the police power, are binding upon persons and corporations engaged in inter-state commerce. *Hamilton* v. *Georgia*, 163 U. S. 299, recognizes the power of the State to prohibit the running of freight trains engaged in inter-state commerce on Sunday.

*Railroad* v. *New York*, 165 U. S. 628, 631, upheld a State enactment requiring steam passenger cars engaged in interstate traffic to be heated.

The case of *Railroad* v. *Haber*, 169 U. S. 613, 632, 633, 634, 635, upheld a State enactment penalizing the bringing of diseased cattle into a State. So, in *Wiggins* v. *East St. Louis*, 107 U. S. 365, 374, a statute was sustained which imposed a State license upon ferry boats engaged in inter-state commerce. As further illustrating the power of the State to enact any police regulations which has any reasonable and substantial relation to the *public convenience,* although such police regulation may collaterally and incidentally affect instruments of inter-state commerce, see the opinion of the Supreme Court in *R. R.* v. *Ohio*, 173 U. S. 292, 294.

The State Government would indeed be in a most pitiable and impotent condition if it could not require that persons travelling through the State, although bound from some point without the State to some other point without the State, should comply with those regulations which are enacted by it (and which are intended to govern all persons within its jurisdiction) for the purpose of furthering the public health, the public morals, the public convenience or the public order.

If a passenger from Wilmington to Washington should insist upon being naked while travelling through the State of Maryland, or should insist upon insulting respectable females without provocation, or upon being drunk and disorderly, it would be a startling thing if he could successfully make the defense that he was immune from punishment by the State, because, although he was within her borders when he offended against her rules of good order, he was bound on an interstate journey.

The State, on principle, must have the right to make any regulation which has any real and substantial relation to the public health, the public welfare, the public morals, the public safety, or the public convenience, binding upon all persons within her borders. That the separation of the white and colored passengers into separate compartments is a reasonable

thing and a thing which may add, or which the Legislature may fairly believe may add, to the convenience and comfort of travellers, no thoughtful and candid man can deny.

A common carrier has a right to make reasonable regulations which must be observed by its passengers; and a regulation by such carrier that colored and white passengers shall use separate compartments, equally good and convenient, has been held a reasonable and lawful regulation. *Chilton v. R. R.*, 19 L. R. A. 269; *Smith v. Chamberlain*, 19 L. R. A. 710. See also the discussion by MR. JUSTICE BROWN in *Plessy v. Fergusson*, 163 U. S. 544, 552.

It has been held that a "Jim Crow Law" was not invalid because a regulation of inter-state commerce, in a well reasoned opinion by a Court of very respectable authority. *Smith v. Tennessee*, 41 L. R. A. 432.

In Louisiana in 1869 a statute was passed requiring *all* passengers to be given the right to go to any portion of the carrier's vehicle or vessel to which any passenger was admitted. This statute was held void as a regulation of inter-state commerce in the case of *Hall v. De Cuir*, 95 U. S. 485. "This Act," said JUDGE HARLAN, in *R. R. v. Ohio*, 173 U. S. 300, "had no relation to the police power and could not have been upheld on that ground. It was a mere unreasonable interference by the Legislature of Louisiana with the control, by carriers engaged in inter-state commerce, of the management of their business."

The public health, or the public morals, or the public convenience might require that a carrier should provide *separate* compartments for passengers of different sexes or of different colors, but it *could not require* that passengers of different sexes, or of different colors, *should be carried in the same* compartment. This is made very clear by JUDGE SNODGRASS, in delivering the opinion in *Smith v. Tennessee*, 41 L. R. A. 432. He there explained the scope of the decision of *Hall v. De Cuir*, 95 U. S. That learned Judge said (41 L. R. A. 434): "A requirement that all persons who travel shall travel *together* is not in any sense a police regulation. It is easy to perceive

how it might conduce to the comfort, health or safety of persons travelling to be *separated*; but no reason of this kind can be found, nor any other of a police nature, for *requiring that all should be crowded or mixed together*; and presumably, therefore, and as it did not arise, no such question was made. It certainly was not considered or decided in that case."

Boyd, J., delivered the opinion of the Court.

The appellant was indicted under the provisions of ch. 109 of the Acts of 1904 of the General Assembly of Maryland for refusing to occupy a car and compartment to which he had been assigned by the conductor of the train on which he was riding. A demurrer to the indictment was filed by the traverser which was overruled by the Court and he then filed a plea in abatement which was demurred to by the State's Attorney and the demurrer was sustained. The traverser was then tried and convicted and, after overruling a motion in arrest of judgment, the Court imposed a fine of five dollars on him. From that judgment this appeal was taken.

The indictment charges that the appellant, being of the colored race, was a passenger on a train of the Philadelphia, Baltimore & Washington Railroad Company operating cars and coaches by steam upon its railroad in the State of Maryland, "on and under a ticket which he had purchased in the city of New York for a continuous transportation therefrom by and over said railroad through the States of Pennsylvania and Delaware and said State of Maryland to the city of Washington." The plea goes more in detail, but it will not be necessary to quote from it. The specific question to be determined is whether the above-mentioned Act of Assembly is in conflict with that part of Art. 1, sec. 8 of the Constitution of the United States, known as the "Commerce Clause" in so far as that Act affects inter-state passengers.

Section 1 of the Act provides "That all railroad companies and corporations, and all persons running or operating cars or coaches by steam on any railroad line or track in the State of Maryland, for the transportation of passengers, are hereby re-

quired to provide separate cars or coaches for the travel and transportation of the white and colored passengers on their respective lines of railroad;" and then provides that a compartment of a car or coach, divided as therein stated, shall be deemed a separate car or coach within the meaning of the Act. Section 2 prohibits any difference or discrimination in quality of or convenience or accommodation in the cars, etc. Section 3 imposes a fine of not less than three hundred nor more than one thousand dollars upon the carrier for violation of the provisions of the Act. Section 4 confers the right and imposes the duty upon conductors and managers to assign white and colored passengers to their respective cars, and provides that a passenger refusing to occupy the car to which he is assigned, on indictment and conviction thereof, may be fined not less than five nor more than fifty dollars, or confined in jail not less than thirty days, or both, in the discretion of the Court. Section 5 imposes a fine on any conductor or manager failing or refusing to perform the duties imposed on him by sec. 4. Sec. 6 authorizes the conductor or manager in charge of the train to assign and set apart a portion of the car assigned to passengers of one color to those of the other color when the car intended for the latter is completely filled, if no extra car can be obtained, and the increased number of passengers could not be foreseen. Section 7 excepts from the operation of the Act employees of railroads, nurses, officers in charge of prisoners, and the prisoners, transportation of passengers in caboose cars, attached to freight trains, parlor and sleeping cars and through express trains that do no local business.

It seems to be well settled that a common carrier has the power, in the absence of statutory provision, to adopt regulations providing separate accommodations for white and colored passengers, provided, of course, no discrimination is made. It was said in *West Chester and Philadelphia Railroad Company* v. *Miles*, 55 Pa. St. 209, that, prior to the Act of March 22nd, 1867, declaring it an offense for railroad companies to make any distinction between passengers on account of race or color, "there was that natural, legal and customary differ-

ence between the white and black races in this State which makes their separation as passengers in a public conveyance the subject of a sound regulation to secure order, promote comfort, preserve the peace and maintain the rights, both of carriers and passengers." That was a suit by a colored woman who had been ejected from a car for refusing to obey a rule of the company requiring conductors to make colored persons sit in one end of the car. The case which was decided in favor of the plaintiff in the Court below was reversed by the Supreme Court of Pennsylvania. JUSTICE AGNEW, in delivering the opinion, said: "In order to preserve and enforce his" (the conductor's) "authority as the servant of the company, it must have a power to establish proper regulations for the carriage of passengers. It is much easier to prevent difficulties among passengers by regulations for their proper separation, than it is to quell them. The danger to the peace engendered by the feeling of aversion between individuals of the different races cannot be denied. It is the fact with which the company must deal. If a negro take his seat beside a white man or his wife or daughter, the law cannot repress the anger, or conquer the aversion which some will feel. However unjust it may be to indulge the feeling, human infirmity is not always proof against it. It is much wiser to avert the consequences of this repulsion of race by separation, than to punish afterwards the breach of the peace it may have caused." There are numerous cases to the same effect, many of which are cited in *Chilton* v. *St. Louis & I. M. R. Co.*, 19 L. R. A. 269 (s. c., 114 Mo. 88); *Smith* v. *Chamberlain, Ibid,* 710 (s. c., 38 S. C. 529); *Ex parte Plessy*, 18 L. R. A. 639 (s. c., 45 La. Ann. 80); *Bowie* v. *Birmingham Ry. & Electric Co.*, 50 L. R. A. 632 (s. c., 125 Ala. 397); and the notes to those cases, as reported in the L. R. A. series.

The Supreme Court of the United States has recognized that doctrine, and has also determined that a State statute requiring separate accommodations for white and colored persons is not contrary to the 13th and 14th Amendments to the Constitution of the United States. *Plessy* v. *Ferguson*, 163 U. S.

537, affirming *Ex parte Plessy, supra.* JUSTICE BROWN, in delivering the opinion of the Court said, the question was whether the statute was a reasonable regulation and with respect to that there must be a large discretion given to the Legislature; that "In determining the question of reasonableness, it is at liberty to act with reference to the established usages, customs and traditions of the people, and with a view to the promotion of their comfort, and the preservation of the public peace and good order. Gauged by this standard we cannot say that a law which authorizes or even requires the separation of the two races in public conveyances is unreasonable or more obnoxious to the 14th Amendment than the Acts of Congress requiring separate schools for colored children in the District of Columbia, the constitutionality of which does not seem to have been questioned, or the corresponding Acts of State Legislatures."

The case last mentioned did not involve the question of inter-state commerce, but was limited to the right of the State to require the carrier to provide separate accommodations for the two races *within the State.* This provision of the Constitution has been a fruitful source of litigation from the early days of our government to the present time. The line of demarcation between cases in which it has been held that the constitutional provision was violated by State statutes and those in which the contrary conclusion was reached, cannot always be easily traced. It has often happened that the Supreme Court has been called upon to determine, under this clause of the Constitution, questions of a most delicate character. To sustain the necessary powers of the general government over inter-state dealings, without injuriously affecting the welfare of the people of the State, is not always free from difficulty, and it is therefore not strange that apparently inconsistent positions have some times been taken. The power to regulate inter-state commerce is undoubtedly vested exclusively in Congress, but the States may enact valid police laws which merely incidentally affect such commerce, if they do not conflict with some Act of Congress on the subject.

The Attorney-General in his brief filed in this case states his contention to be "that the police regulations of a State, which are valid in themselves, and which have a real and substantial relation to any head of the police power, are binding upon persons and corporations engaged in inter-state commerce," and that persons travelling through the State must comply with those regulations which are enacted "for the purpose of furthering the public health, the public morals, the public convenience or the public order." He conceded at the argument that unless the statute now under consideration was within the police powers of the State, it was invalid in so far as it affected inter-state passengers, and as that is undoubtedly so, we must consider the question from that standpoint. It may be well at this point to recall some of the definitions or explanations of this term—police powers of the States—as given by the Supreme Court. It has spoken of it as a "power to enact laws to promote the order and to secure the comfort, happiness and health of the people," (*Hennington* v. *Georgia*, 163 U. S. 299); as "their admitted police powers, and having a real relation to the domestic peace, order, health and safety of their people, but which by their necessary operation affect to some extent, or for a limited time, the conduct of commerce among the States," (*Ibid*); "such reasonable regulations as were appropriate for the protection of the health, the lives and the safety of their people," (*Railroad Company* v. *New York*, 165 U. S. 628); "reasonable regulations for their management, in order to secure the objects of the incorporation, and the safety, good order, convenience and comfort of the passengers and of the public," (*Gladson* v. *Minnesota*, 166 U. S. 427); and in *Lake Shore, etc., Co.* v. *Ohio*, 173 U. S. 285, it was held that "the power exists in each State by appropriate enactments not forbidden by its own or the Federal Constitution to regulate the relative rights and duties of all persons and corporations within its jurisdiction, so as to provide for the public convenience and the public good," and "the power of the State by appropriate legislation to provide for the public convenience stands upon the same ground as its power by appro-

priate legislation to protect the public health, the public morals, or the public safety."

JUSTICE BROWN, in delivering the opinion in *C. & C. Bridge Co.* v. *Kentucky*, 154 U. S. 204, said, "The adjudications of this Court with respect to the power of the States over the general subject of commerce are divisible into three classes. First, those in which the power of the State is exclusive; second, those in which the States may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the States cannot interfere at all." He said that within the second-class are embraced laws for the regulation of pilots, quarantine and inspection laws, the policing of harbors, the improvement of navigable channels, the regulation of wharves, piers and docks, the construction of dams and bridges across the navigable waters of a State, and the establishment of ferries. Other instances, more analogous to this case, in which State statutes have been upheld, although it was contended they were contrary to this clause of the Constitution, are those requiring engineers to undergo examinations and obtain licenses from a State Board of Examiners before being permitted to run trains in the State (124 U. S. 465), prohibiting anyone from serving on railroad lines who was color blind, or had defective vision (128 U. S. 96); preventing freight trains from running on Sunday (163 U. S. 299); forbidding heating passenger cars with stoves or furnaces (165 U. S. 628). Such legislation is sustained on the ground that a State has the right to adopt reasonable rules for the construction, management and operation of railroads within its jurisdiction, designed to protect persons and property otherwise endangered by their use. "They are not in themselves regulations of inter-state commerce, although they control in some degree the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police powers of the State to regulate the relative rights and duties of all persons and corporations within its limits," *C. M. & St. Paul Ry. Co.* v. *Solan*, 169 U. S. 133.

Having seen .that under the authorities a common carrier can itself adopt reasonable regulations for the separate accommodation of white and colored passengers, and that the States can lawfully enact laws requiring such separation, so long as they are confined to *intra-state* commerce, and having gathered from the decisions of the Supreme Court such statements of the police powers of the States as show the nature of those general powers, it is incumbent upon us to see how far the Supreme Court has determined or indicated its views on the specific question now before us.    The case of *Hall* v. *DeCuir*, 95 U. S. 485, is more applicable than any other we have found.  The Supreme Court treated the statute involved in that case as requiring those engaged in inter-state commerce to give all persons travelling in Louisiana equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color, as the State Court had so construed it.   The Court said that "State legislation which seeks to impose a direct burden upon inter-state commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress," and that that statute occupied that position.   CHIEF JUSTICE WAITE, in delivering the opinion said, "It does not act upon the business through the local instruments to be employed after coming within the State, but directly upon the business as it comes into the State from without, or goes out from within.   While it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. His disposition of passengers taken up and put down within the State, or taken up within to be carried without, cannot but affect, in a greater or less degree, those taken up without and brought within, and some times those taken up and put down without.   A passenger in the cabin set apart for the use of whites without the State must when the boat comes within, share the accommodations of that cabin with such colored persons as may come on board afterwards, if the law is enforced."   The Chief Justice added that "It was to meet just

such a case that the commercial clause in the Constitution was adopted. * * * If each State was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each State could provide for its own passengers and regulate the transportation of its own freight, regardless of the interests of others. Nay more, it could prescribe rules by which the carrier must be governed within the State in respect to passengers and property brought from without. On one side of the river or its tributaries he might be required to observe one set of rules, and on the other another. Commerce cannot flourish in the midst of such embarrassments. No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a State line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate. Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity of his business, and to secure it Congress, which is untrammelled by "State lines, has been invested with the exclusive legislative power of determining what such regulations shall be." The Chief Justice quoted from JUSTICE FIELD, in *Welton* v. *Missouri*, 91 U. S. 282, that "Inaction (by Congress) * * * is equivalent to a declaration that inter-state commerce shall remain free and untrammelled" and said that congressional inaction left the carrier "at liberty to adopt such reasonable rules and regulations for the disposition of passengers upon his boat, while pursuing her voyage within Louisiana or without, as seemed to him most for the interest of all concerned. The statute under which this suit is brought, as construed by the State Court, seeks to take away from him that power so long as he is within Louisiana, and while recognizing to the fullest extent the principle which sustains a statute, unless its unconstitutionality is clearly established, we think this statute, to the extent that it requires those engaged in the transportation of passengers among the States to carry colored persons in Louisiana in the

same cabin with whites, is unconstitutional and void. If the public good requires such legislation, it must come from Congress and not from the States."

We have thus quoted at unusual length from that case because it is relied on by the appellant as conclusive, and is sought to be distinguished from this case by the State. It must be admitted that there is unquestionably some distinction. But other decisions of the Supreme Court seem to intimate, although they do not definitely determine, that a law such as that now under consideration is unconstitutional, in so far as it is attempted to be applied to inter-state passengers, and *Hall* v. *DeCuir*, has often been cited and much of the language used by the Chief Justice has been quoted from time to time in denying the right of States to interfere with inter-state commerce.

In *Railway Company* v. *Illinois*, 118 U. S. 557, JUSTICE MILLER after stating that in the cases of *Munn* v. *Illinois; C. B. & Q. R. R. Co.* v. *Iowa*, and *Peik* v. *Chicago & N. W. R. R. Co.* (all in 94 U. S.), some questions did not receive full consideration said, in the head notes prepared by him: "Notwithstanding what is there said, this Court holds now, and has never consciously held otherwise, that a statute of a State intended to regulate or to tax, or to impose any other restriction upon the transmission of persons or property or telegraphic messages, from one State to another, is not within that class of legislation which the States may enact in the absence of legislation by Congress; and that such statutes are void even as to that part of such transmission which may be within the State." In that case the Court quoted at length from the opinion in *Hall* v. *DeCuir*, to sustain the doctrine announced. The Chief Justice and JUSTICES BRADLEY and GRAY dissented, but they distinguished it from *Hall* v. *DeCuir*. In *Louisville N. O. & T. Ry. Co.* v. *Mississippi*, 133 U. S. 587, a statute of Mississippi requiring all railroads carrying passengers in that State (other than street railroads) to provide equal but separate accommodations for the white and colored races, was held to be within the powers

of the State and not a regulation of inter-state commerce, as the Supreme Court of the State had held that it applied solely to commerce within the State. There the case of *Hall* v. *De-Cuir*, was again considered at length, and after quoting from it JUSTICE BROWN said: "So the decision was by its terms carefully limited to those cases in which the law practically interfered with inter-state commerce. Obviously whether inter-state passengers of one race should, in any portion of their journey, be compelled to share their cabin and accommodations with colored passengers, was a question of inter-state commerce, and to be determined by Congress alone." Again he said: "So far as the first section is concerned (and it is with that alone we have to do) its provisions are fully complied with when to trains within the State is attached a separate car for colored passengers. This may cause an extra expense to the railroad company, but not more so than State statutes requiring certain accommodations at depots, compelling trains to stop at crossings of other railroads, and a multitude of other matters confessedly within the power of the State. No question arises under this section as to the power of the State to separate in different compartments inter-state passengers, or to affect in any manner the privileges and rights of such passengers." In that case JUSTICE HARLAN and BRADLEY dissented on the ground that *Hall* v. *DeCuir* was applicable. In *Ches. & Ohio R. R. Co.* v. *Kentucky*, 179 U. S. 388, the railway company was, as in the *Mississippi case, supra*, indicted for violation of a similar law. The Court said "The real question is whether a proper construction of the Act confines its operation to passengers whose journeys commence and end within the boundaries of the State or whether a reasonable interpretation of the Act requires colored passengers to be assigned to separate coaches when travelling from or to points in other States." The Court added that "Similar questions have arisen several times in this Court," and then referred to *Hall* v. *DeCuir*, the *Mississippi case*, and *Plessy* v. *Ferguson*. The language of the Kentucky statute was broad enough to include all railroads, but it was held that the decision of the Court of

Appeals of that State, sustaining the constitutionality of the Act on the ground that it only applied to transportation between points within the State, or if not, that the regulation of such transportation is severable from that as to inter-state business constituted a determination of the local law which was binding on the Supreme Court. In that case the Supreme Court did not in so many words say that the law would have been unconstitutional if it had been construed to apply to inter-state passengers, but it very strongly intimated it and JUSTICE BROWN concluded the opinion by saying "In view of the language above quoted from the *Lander case*, it would be unbecoming for us to say that the Court of Appeals would not construe the law as applicable to domestic commerce alone, and if it did, the case would fall directly within the *Mississippi case* (133 U. S. 587). We therefore feel compelled to give it that construction ourselves, and so construing it there can be no doubt as to its constitutionality. *Plessy v. Ferguson,* 163 U. S. 537."

In *Western Union Telegraph Company* v. *James,* 162 U. S. 650, the Court, through JUSTICE PECKHAM, repeated what we have quoted above from JUSTICE BROWN's opinion in 154 U. S. 204, and added "When the subjects in regard to which the laws are enacted, instead of being of a local nature affecting inter-state commerce but incidentally, are national to their character, then the non-action of Congress indicates its will that such commerce shall be free and untrammelled," and again "Legislation which is a mere aid to commerce may be enacted by a State, although at the same time it may incidentally affect commerce itself, *Mobile County* v. *Kimball,* 102 U. S. 691. On the other hand a State statute which only assumed to regulate those engaged in inter-state commerce while passing through the particular State has been held void because it in effect and necessarily regulated and controlled the conduct of such persons throughout the entire voyage, which stretched through several States. Such is the case of *Hall* v. *DeCuir,* 95 U. S. 485." The Court then quoted at length from CHIEF JUSTICE WAITE's opinion in that case, and

said "It is seen from this reasoning that the foundation for holding the Act void was that it necessarily affected the conduct of the carrier and regulated him in the performance of his duties outside and beyond the limits of the State enacting the law. A provision for the delivery of telegraphic messages arriving at a station within the State is not of the same nature as that statute, and would have no such effect upon the conduct of the telegraph company with regard to the performance of its duties outside the State." After referring to other cases the Court asks about the statute then under consideration; "is it a mere police regulation that but incidentally affects commerce, such as *Smith* v. *Alabama*, 124 U. S. 465, and which at any rate would be valid until Congress should legislate upon the subject, or is it of such a nature, so extensive and national in character, that it could only be dealt with by Congress? We do not think it is the latter. It is not at all similar in its nature to the case above cited of *Hall* v. *DeCuir*." In *Illinois Central R. R. Co.* v. *Illinois*, 163 U. S. 142, the rule was thus stated, "The State may make reasonable regulations to secure the safety of passengers, even on inter-state trains, while within its borders. But the State can do nothing which will directly burden or impede the inter-state traffic of the company or impair the usefulness of its facilities for such traffic."

Many other illustrations might be given from the decisions of the Supreme Court to show the views of that Court on legislation by the States which in any way burdens or interferes with inter-state commerce. The Court has undoubtedly enlarged the classes of cases to which the police powers of the States may be made applicable (although such a decision as 173 U. S. 702, *supra*, caused four of the Justices to dissent), but it has been very careful not to permit them to pass laws which in any way *regulate* inter-state commerce. Statutes which can reasonably be said to be necessary for the protection of passengers and property while being carried through a State have generally been sustained, and some that only affect the comfort and convenience of the public have also been, but

not so much latitude has been allowed in the latter cases. The cases of *Munn* v. *Illinois; Chicago, etc., R. R. Co.* v. *Iowa,* and *Peik* v. *Chicago, etc., R. R. Co.,* which held that the States, in the absence of legislation by Congress, had power to regulate inter-state carriers in matters of domestic concern although inter-state commerce may be thereby affected, were so modified as to practically overrule them in some respects, 118 U. S. 557. The Supreme Court sustained a statute requiring a limited number of trains to stop at stations of over three thousand inhabitants (173 U. S. 285), and also one requiring all regular passenger trains to stop at county seats (166 U. S. 427), but it denied the validity of a statute requiring an inter-state fast mail train to turn aside from its course so as to stop at a county seat (163 U. S. 142) and a statute requiring every passenger train to stop at county seats, regardless of the number of such trains and of the character of the traffic, was held to be unreasonable and void because imposing a direct burden upon inter-state commerce. *Cleveland, etc., R. R. Co.* v. *Illinois,* 177 U. S. 514. That statute was said to be subject to the criticism made of the Louisiana statute in *Hall* v. *DeCuir,* that "while it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct, to some extent, in the management of his business throughout his entire voyage."

Although the State has power to adopt reasonable police regulations to secure the safety and support of passengers on inter-state trains while within its borders, it is well settled, as we have seen, that it can do nothing which will directly burden or impede the inter-state traffic of the carrier, or impair the usefulness of its facilities for such traffic. When the subject is national in its character and admits and requires uniformity of regulation affecting alike all the States, the power is in its nature exclusive and the State cannot act. The failure of Congress to act as to matters of national character, is, as a rule, equivalent to a declaration that they shall be free from regulation or restriction by any statutory enactment, and it is well settled that inter-state commerce is national in its

character. Applying these general rules to the particular facts in this case and bearing in mind the application of the expressions used in *Hall* v. *De Cur* to cases involving questions more or less analogous to that before us, we are forced to the conclusion that this statute cannot be sustained to the extent of making inter-state passengers amenable to its provisions. When a passenger enters a car in New York under a contract with the carrier to be carried through to the District of Columbia, if when he reaches the Maryland line he must leave that car and go into another, regardless of the weather, the hour of the day or the night, or the condition of his health, it certainly would, in many instances, be a great inconvenience and possible hardship. It might be that he was the only person of his color on the train and no other would get on in the State of Maryland, but he, if the law is valid against him, must as soon as he reaches the State line, leave the car he started in and go into another which must be furnished for him, or subject himself to a criminal prosecution. Or take for illustration the Cumberland Valley Railroad from Winchester, Va., to Harrisburg, Pa. In Virginia a law of this kind is in force, while in West Virginia and Pennsylvania there is none, so far as we are aware. On a train starting from Winchester the passengers must be separated according to their color for six or eight miles, when it reaches the West Virginia line, then through West Virginia they can mingle again until they reach the Potomac when they would be again separated, and so continue until they reach Mason and Dixon's line, when they are again permitted to occupy cars without regard to their color. If the railroad company did not deem it desirable or proper to have separate compartments throughout the journey, and often times it might be wholly unnecessary for the comfort of the passengers on said trains, as there might be very few colored persons on them, there would be at least three changes in that short distance. We cannot say, therefore, that as applied to inter-state passengers such a law as this would be so free from the objections pointed out in the cases above-mentioned as to be sustained under the police powers of the States.

Although we have said above that there was a distinction between this case and that of *Hall* v. *De Cuir*, we are of the opinion that the Supreme Coart has intimated very strongly that when a case such as this comes before it for decision, the same conclusion would be reached as in that case—that the law was contrary to the commerce clause of the Constitution. The language of the Chief Justice used in that case would apply with equal force to this statute, and the Supreme Court has over and over again not merely cited that case as authority, but quoted at length the language used, with approval. Although many of the decisions of that tribunal have been modified, distinguished or overruled, and very few important cases have been decided on this clause of the Constitution without dissent from one or more of the Court, we find none from the language used by CHIEF JUSTICE WAITE. Without further discussing the subject, we are convinced from what it has already said that the Supreme Court will, when called upon to determine this precise question, decide that such a law as this is invalid, in so far as it affects inter-state passengers, and being of that opinion we must accept that as the law by which we are to be governed.

In the case of *Smith* v. *Tennessee*, 100 Tenn. 494 (s. c. 41 L. R. A. 432), the contrary conclusion was reached in an exceedingly able opinion, but as we understand the decisions of the Supreme Court on analogous questions, and the views so strongly indicated by them on this particular subject, we do not feel at liberty to follow the Tennessee Court. In *Plessy's case*, 45 La. Ann. 80, the Court held a similar law to be unconstitutional. In Mississippi and Kentucky the State Courts so limited their decisions as to cause the Supreme Court to affirm them on the ground that they had confined the statutes to *intra-state* passengers.

This conclusion will require us to reverse the judgment appealed from, as the appellant was an inter-state passenger. As that question was also argued, it is proper to add that we see no difficulty in sustaining the law in so far as it applies to intra-state passengers. The statute, it is true, uses broad lan-

guage, but no broader than that in other States which have been construed by the Supreme Court and by State Courts to apply only to passengers within the State. *Plessy* v. *Ferguson*, the *Mississippi case* and *Kentucky case, supra.* It may be questionable whether our statute does not contemplate confining the law to local business, as in sec. 7 it exempts parlor and sleeping cars, and "through express trains that do no local business." If it be necessary for the comfort and safety of the passengers, and especially for the preservation of order, in portions of the State where the two races are anything like equally divided in numbers, or the feeling between the races is such as to make it desirable to keep them separated, the carriers themselves have full authority to do so as we have seen above. They could undoubtedly adopt such regulations, even on inter-state trains, as would relieve them and their passengers from all danger and inconvenience on account of the two races travelling together, by having separate cars or compartments on trains doing local business.

We are then of the opinion that although the Act of 1904, ch. 109 of the laws of Maryland is valid in so far as it affects commerce wholly within the State, it is invalid as to inter-state passengers and must be construed as not applying to them. The judgment will be reversed, and as there can be no conviction of the appellant on the facts alleged in the indictment, a new trial will not be awarded.

*Judgment reversed, without awarding a new trial.*