## Commonwealth v. Illinois Central Railroad Co.

(Decided January 11, 1911.)

## Appeal from McCracken. Circuit Court.

1. Railroads—Hauling Sleeping Cars—Liability Under Separate Coach Law.—A sleeping car owned by the Pullman Car Co. manned and controlled wholly by its servants and the fares for berths and seats which were exclusively received and owned by that company is not, because attached to and hauled with the Illinois Central Railroad Co.'s passenger train, operated by it within the meaning of Sec. 795 Ky. Statutes. A railroad coach provided with seats and other conveniences is a vehicle for transporting persons, paying for the privilege, from one place to another. A sleeping car is a vehicle for repose as well as for transportation; while equipped with seats and greater conveniences than found on the day coach, the seats are readily converted into berths or sleeping places for the repose of persons occupying them, but to entitle such persons to such berths in the sleeper, they must pay the Pullman Company the fare it charges therefor, and in addition, pay the railroad company to whose train the sleeper is attached, the regular fare it charges persons for the privilege of riding the same distance in one of its ordinary or day coaches.

2. Same—Indictment.—The fact that a railroad company hauls a sleeping car, does not make it liable to indictment because of its hauling the sleeping car with its unseparated colored passengers and white passengers within or through the State as in thus hauling the sleeper the railroad company did not operate it in the meaning of the statute.

3. Same—Statutory Requirement.—The Statute does not require railroad companies to have sleeping cars in their trains or own them: they are owned and furnished by the Pullman Company. Appellee railroad company did have in its train a separate day coach for white and colored passengers, partitioned and lettered as the statute requires and it was not claimed by the Commonwealth that this separate coach did not amply accommodate all white and colored passengers on the train, or that the compartment set apart for colored passengers, was any less convenient, comfortable or attractive than the compartment thereof set apart for white passengers. The only complaint is that such a sleeping car or compartment thereof as would afford a separation of white and colored passengers in the manner contemplated by the statute, was not provided by the appellee railroad company. As said before, appellee was under no duty to provide sleeping cars for its train and such a construction of the statute, which is a highly penal one, is not warranted by its language or by any rule of construction known to us.

JAS. BREATHITT, Attorney General, T. B. M'GREGOR, Assistant Attorney General, JOHN G. LOVETT, Commonwealth's Attorney, and S. E. CLAY, County Attorney, for appellant.

WHEELER & HUGHES, BLEWITT LEE and TRABUE, DOOLAN & COX for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The grand jury of McCracken county returned against appellee in the circuit court of that county the following indictment:

"The grand jurors of the County of McCracken in the name and by the authority of the Commonwealth of Kentucky accuse the Illinois Central Railroad Company of the offense of operating and running railroad cars and coaches by steam on a railroad track and line for the transportation of white and colored passengers without having upon each car and coach and compartment thereof in some conspicuous place appropriate words in plain letters indicating the race for which said coach and car and compartment had been and should have been set apart, committed in the manner and form as follows, to-wit: The said Illinois Central Railroad Company in the said county of McCracken on the 4th day of May, 1910, and within one year before finding this indictment did wilfully and unlawfully fail, refuse and neglect to furnish and provide separate cars and coaches and compartments upon the railroad coaches and cars being operated by it by steam on its railroad track and the line for the travel and transportation of white and colored passengers, with each compartment, coach and car having in some conspicuous place appropriate words in plain letters indicating the race for which it had been and should have been set apart. The said Illinois Central Railroad Company being at the time engaged in operating and running railroad coaches and cars upon a railroad line and track in the State of Kentucky and McCracken county, against the peace and dignity of the Commonwealth of Kentucky."

Section 795, Kentucky Statutes, for the alleged violation of which appellee was indicted, reads as follows:

"Any railroad company or corporation, person or persons, running or otherwise operating railroad cars or coaches, by steam or otherwise, on any railroad line or track within this State, and all railroad companies, person or persons doing business in this State, whether upon lines of railroad owned in part or whole, or leased by them; and all railroad companies, person or persons, operating railroad lines that may hereafter be

built under existing charters, or charters that may hereafter be granted in this State; and all foreign corporations, companies, person or persons, organized under charters granted or that may be hereafter granted by any other State, who may now, or may hereafter be, engaged in running or operating any of the railroads of this State, either in part or whole, either in their own name, or that of others, and hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach within the meaning of this act, and each separate coach and compartment shall bear in some conspicuous place appropriate words in plain letters indicating the race for which it is set apart.''

Appellee entered a plea of not guilty and both parties having waived the right of trial by jury and agreed in writing upon the facts constituting the entire evidence, the court, following the submission of the case, rendered judgment holding appellee not guilty and dismissing the indictment. The Commonwealth was refused a new trial and being dissatisfied with that ruling, as well as the judgment, it has appealed.

According to the agreed statement of facts, appellee's railroad runs from the city of Louisville through the State of Kentucky, by way of Paducah, to Memphis, Tennessee, and that on the day and occasion indicated in the indictment, appellee ran a train from Louisville to Paducah and points without the State south thereof, which consisted of an engine, tender, baggage car, compartment day car, ordinary day car, and a Pullman or sleeping car; that the compartment car was divided by a substantial wooden partition, on one side of which the seats were exclusively assigned to and occupied by colored passengers, and on the other side by white passengers; that the partition on the side asssigned to colored persons contained in a conspicuous place and in plain letters the words ''exclusively for the use of colored persons;'' and on the other side in an equally conspicuous place and letters the words ''exclusively for the use of white persons;'' that the ordinary day car also bore in a conspicuous place and letters the words ''exclusively for the use of white persons;'' that the

Pullman sleeper was in the rear of the other cars, but did not have therein a sign or contain words indicating to what race it was set apart.

It further appears from the agreed statement of facts that the sleeper was delivered to appellee by the Baltimore & Ohio Southwestern Railroad Company at Louisville, to be hauled by it through Kentucky and into Tennessee; that at the time of its delivery to appellee the sleeper contained, among other passengers, one colored man, whose ticket, which had been purchased at a point without Kentucky, entitled him to ride over the Baltimore & Ohio Southwestern Railroad to Louisville, and from that city over appellee's railroad through Kentucky and to Memphis, Tennessee; that the colored passenger in question had also purchased from the Pullman Company, before reaching Kentucky, a sleeper ticket which entitled him to ride in the sleeper and to occupy the berth or section designated by the ticket while being hauled by the Baltimore & Ohio Southwestern Railroad Company to Louisville and likewise by the appellee railroad company from Louisville through Kentucky and Tennessee to Memphis in the latter State, his destination.

It also appears from the agreed facts that the Pullman car was manned by a conductor and porter in the employ and under the control of the Pullman company; that none of the proceeds derived from the sale of tickets for berths or space in the Pullman car belonged to appellee or was received by it, nor did it derive any revenue from persons purchasing such berths or space other than for the sale of transportation on its railroad train paid by passengers for riding in the day coaches.

The constitutionality of the statute under consideration has been repeatedly sustained. Ohio Valley Railway's Receiver v. Lander, 104 Ky., 431; Quinn v. L. & N. R. R. Co., 17 R., 811; L. & N. R. R. Co. v. Commonwealth, 18 R, 491; Bailey v. L. & N. R. R. Co., 51 S. W., 160; C. & O. Ry. Co. v. Commonwealth, 179 U. S., 388.

A sleeping car owned by the Pullman Car Company manned and controlled wholly by its servants and the fares for berths and seats in which were exclusively received and owned by that company, was not, because attached to and hauled with appellee's passenger train, operated by it within the meaning of the statute, supra, A railroad coach or car, provided with seats and other

conveniences is a vehicle for transporting persons, paying for the privilege, from one place to another. A sleeping car is a vehicle for repose as well as transportation; while equipped with seats and greater conveniences than are found in the day coach, the seats are readily converted into berths or sleeping places for the repose of persons occupying them, but to entitle such persons to seats or berths in the sleeper, they must pay the Pullman Compny the fare it charges therefor and in addition, pay the railroad company to whose train the sleeper is attached, the regular fare it charges persons for the privilege of riding the same distance in one of its ordinary or day coaches.

It does not appear from the statement of facts that appellee was paid anything by the Pullman Company for hauling its sleeper, in view of which and of the admitted fact that it received no part of the fares collected by the Pullman Company of persons riding in the sleeper, we must assume that the only benefit it derived from the hauling of the sleeper was the increase of travel, which the greater comfort and security its connection with the train assured, especially to the sick and unprotected who travel alone. It is patent that the only control appellee had of the sleeper was such as was necessary to its safe transportation. In other respects the sleeper, together with its occupants, was under the exclusive control of the servants of the Pullman Company in charge of it.

It goes without saying, that for any injury to the occupants of the sleeper that might have resulted from the negligence of appellee's servants in charge of the train in operating it, appellee would have been liable in a civil action for damages; but that this is true, does not make it liable to indictment because of its hauling the sleeping car with its unseparated colored passenger and white passengers, within or through the State, because in thus handling the sleeper appellee did not operate it in the meaning of the statute. It is admitted that appellee's train contained a separate coach for white and colored passengers, partitioned and lettered as required by the statute, and if the colored passenger in the sleeper had become a passenger of the train upon a ticket merely entitling him to ride in an ordinary or day coach, upon his entering the train it would have been the duty of appellee's conductor to direct and re-

quire him to enter the compartment of the separate coach set apart for the use of colored persons. But such was not the way in which the colored person became a passenger; he provided himself before reaching this State with a ticket for the sleeper, and before or after he arrived in this State, with a ticket that also entitled him to be carried to Memphis, Tennessee, by or upon appellee's train to which the sleeper in which he was a passenger was attached at Louisville. He was, therefore, a passenger of the sleeper when it was attached to appellee's train and whether entitled to be classed as an interstate passenger or not (a question we do not decide), appellee's conductor had no such control of the sleeper, its crew or passengers, as would have authorized him to compel the colored passenger to leave it and enter the compartment of the separate coach set apart for colored persons, nor could he have required the conductor of the sleeper to eject such colored passenger therefrom and assign him to the car designated for persons of his color.

In the case of Louisville & Nashville Railroad Company v. Commonwealth, 99 Ky., 663, which was a penal prosecution under the statute, supra, against the railroad company, for unlawfully and wilfully, by its agents in charge of its train, failing and refusing, as alleged, to furnish a separate coach for white and colored passengers, it appeared from the proof that the train had been chartered by two individuals to run from Greensburg to Campbellsville and return the same day; that they collected the fares and directed at what stations the train should stop, but that the train was operated by the company's crew, including the conductor. Among the passengers on the train were two negroes, Thomas White and his wife; when they boarded the train they entered the compartment of the separate coach set apart for persons of their color and which had theretofore been so used by the railroad company, but before reaching their destination they were compelled to give up the colored compartment to white persons and ride in a mail and tool car attached to the train. It also appeared from the proof that the compartment of the separate coach set apart for colored passengers and from which White and wife were ejected, conformed in its finish and appointments, to the requirements of the statute. Upon the state of facts thus presented, we said:

"Where the company has furnished the kind of cars or coaches which the law requires, section 799, Kentucky Statutes imposes the duty on the conductor or manager of the railroad to assign the white and colored passengers to their respective coaches or compartments therein. Section 800 provides a penalty to be imposed on the conductor or manager for his failure to discharge the duty required of him. This is not a proceeding to recover damages of the company for a wrongful act of its agent or employe. It is a penal prosecution to impose a fine against the company for the alleged violation of a statute. The company cannot be fined for an act of those whom it puts in charge of a train because they may have violated a penal statute. The failure to furnish the coaches for the transportation of white and colored pasengers of the kind required by the statute is an offense of the company. A failure to assign the white and colored passengers to their respective coaches or compartments is an offense of such conductor or those in charge of the train. For the offense of the company the conductor cannot be convicted and fined, neither can the company be convicted and fined for the offense of the conductor or those in charge of the train, as is the result of this prosecution. The court should have told the jury to find for the defendant."

No reason is apparent for saying that appellee's conductor should have required the colored passenger in the sleeper to leave it and take the compartment in the day coach designated for his race, but if such had been his duty, appellee cannot under the statute and in view of the authority, supra, be indicted or punished because of its nonperformance.

The statute does not require railroad companies to have sleeping cars in their trains or own them; they are owned and furnished by the Pullman Company. Appellee did, however, have in its train a separate day coach for white and colored passengers, partitioned and lettered as the statute requires, and it was not claimed by the Commonwealth that this separate coach did not amply accommodate all white and colored passengers on the train, or that the compartment thereof set apart for colored passengers, was any less convenient, comfortable or attractive than the compartment or other day coaches set apart to the whites. The only complaint is that such a sleeping car, or compartment thereof, as would afford a separation of white and colored passengers in the

manner contemplated by the statute, was not provided by appellee. As previously remarked, appellee was under no duty to furnish sleeping cars for its train, and such a construction of the statute, which is a highly penal one, is not warranted by its language or by any rule of construction known to us.

The conclusions already expressed being decisive of the case, we deem it unnecessary to consider other questions discussed in the briefs of counsel.

For the reasons indicated the judgment is affirmed.