STATE v. GALVESTON, H. & S. A. RY. CO.*
(No. 5533.)

(Court of Civil Appeals of Texas. Austin. Jan. 26, 1916. Rehearing Denied March 1, 1916.)

1. RAILROADS ☞226 — ACCOMMODATIONS FOR WHITE AND COLORED PASSENGERS — PENALTY.

Rev. St. 1911, art. 6746, requires carriers of passengers to provide separate coaches or compartments for white and negro passengers, equal in all points of comfort and convenience. Article 6748 requires the separate compartments to be lettered indicating the race for which each is set apart. Article 6749 provides the penalty for noncompliance. Article 6750 provides an exception that railroad companies may haul sleeping cars, dining or café cars, or chair cars to be used exclusively by either white or negro passengers separately, but not jointly. Article 6753 requires conductors to refuse admittance or eject passengers not entitled to ride under the above provisions. Held that, if the carrier furnishes the accommodations required, no penalty can be recovered from it, although the passenger or conductor may be subject to penalty for riding or permitting one to ride in the wrong car.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 740; Dec. Dig. ☞226.]

2. RAILROADS ☞254(6)—OPERATION—ACCOMMODATIONS—PENALTY—BURDEN OF PROOF.

In an action to recover the penalty under such statutes, the burden is on the state to show that the required accommodations were not provided.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. ☞254(6).]

3. RAILROADS ☞254(6)—OPERATION—ACCOMMODATIONS—PENALTY—EVIDENCE.

Evidence that white and negro passengers occupied together a particular Pullman coach is insufficient to show that other coaches properly marked and fitted, as required by such statutes, were not provided.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. ☞254(6).]

4. COMMERCE ☞62 — CARRIAGE OF PASSENGERS—NEGROES—ACCOMMODATIONS.

Neither the railroad nor the conductor has, under such statutes, the right to compel an interstate negro passenger to leave the coach in which he was riding and go into another, though equal in point of comfort and convenience.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 81; Dec. Dig. ☞62.]

5. RAILROADS ☞254(6)—OPERATION—ACCOMMODATIONS—PENALTY—BURDEN OF PROOF.

Under such statutes, if it be conceded that they apply to Pullman coaches, the burden is on the state to show that no other Pullman coaches in the train were equipped as prescribed, in the absence of which showing no penalty could be recovered.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. ☞254(6).]

6. RAILROADS ☞254(6)—OPERATION—ACCOMMODATIONS—PENALTY—BURDEN OF PROOF.

In an action for the penalty under such statutes, the fact that the railroad proved proper accommodations in day coaches and made no proof as to the condition of accommodations in Pullmans is insufficient to shift to it the burden of proving compliance as to Pullman coaches.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. ☞254(6).]

7. RAILROADS ☞226—OPERATION—ACCOMMODATIONS—PENALTY.

Under such statutes, if the train contained Pullman coaches properly marked and fitted, the fact that a negro· was permitted to ride in a Pullman not so marked or equipped would not entitle the state to recover the penalty from the railroad.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 740; Dec. Dig. ☞226.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the State of Texas against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for defendant, and the State appeals. Affirmed.

B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State. H. M. Garwood, J. H. Tallichet, and Baker, Botts, Parker & Garwood, all of Houston, for appellee.

KEY, C. J. In this case there was a nonjury trial, and the judge filed the following conclusions of fact:

"(1) It was admitted upon the trial and in the answer of the defendant, and the court concludes as a fact, that the defendant was a railway corporation organized and existing under the laws of the state of Texas at the time referred to in the petition; that it owned, controlled, and operated a line of railway extending from the Rio Grande river west of the city of El Paso, through the cities of El Paso and San Antonio to Houston, Tex.; that on said date it operated passenger trains over said line between the places aforesaid; and that on said date it operated its passenger train No. 10, which was equipped with passenger coaches. The defendant also admitted, and the court concludes as a fact, that said train No. 10 also carried Pullman sleeping cars, and that a negro or negroes rode in said Pullman tourist car No. 3197 from a point outside of the state of Texas to San Antonio, Tex.

"(2) The court concludes from the evidence that the negro passengers in said Pullman tourist car No. 3197 consisted of a woman and three

children, who took passage from San Francisco, Cal., and a man, who took passage from Los Angeles, Cal., said passengers having both sleeping car and railway transportation from said points into and through the state of Texas, and to points in other states beyond the state of Texas.

"(3) That said train No. 10 was a through interstate train, moving in continuous transit from San Francisco, Cal., through the states of California, Arizona, New Mexico, Texas, and Louisiana to the city of New Orleans, La., over the railway line of the Southern Pacific Railway Company to the Rio Grande at a point about four miles west of the city of El Paso, and over the line of the Galveston, Harrisburg & San Antonio Railway Company from said Rio Grande river to Houston, Tex., and over the line of the Texas & New Orleans Railway Company to the Texas state line, and over the line of the Louisiana Western Railway Company to Lafayette, La., and thence over the line of Morgan's Louisiana & Texas Railway & Steamship Company to New Orleans, La., and that said Pullman tourist sleeper No. 3197, in which said colored passengers were transported from San Francisco and Los Angeles, respectively, was a through interstate sleeping car, moving in said train from San Francisco, Cal., over said railway lines to New Orleans, La.

"(4) That there were no separate compartments for the white and colored races in said sleeping car.

"(5) That defendant's said train No. 10 from the Rio Grande river to San Antonio was provided with coaches which were divided into separate compartments for the white and colored races, other than said Pullman tourist car No. 3197."

In addition to the facts found by the court, it was alleged by the plaintiff and admitted by the defendants that there were several other sleeping cars in the train referred to, but the evidence fails to show whether or not any of the other sleeping cars were set apart and marked for the different races. It was also shown that the Pullman company had its own conductor in charge of the Pullman coaches, who collected the fares for that company from passengers riding in sleeping coaches, and who did not collect any fares for the railroad company. In fact, the testimony indicates a similar state of facts to those involved in Commonwealth v. Railway Co., 141 Ky. 502, 133 S. W. 1158, 32 L. R. A. (N. S.) 801, which will hereafter be referred to.

## Opinion.

[1] The state brought this suit to recover penalties prescribed by the act of 1907, now incorporated in the Revised Statutes of 1911 from articles 6746 to 6753, inclusive; and from a judgment in favor of the defendant railway company, the state has appealed. The law referred to was enacted for the purpose of requiring common carriers of passengers in this state to provide separate coaches or compartments for the accommodation of white and negro passengers, equal in all points of comfort and convenience. It prescribes a penalty against the carrier, recoverable by the state; for a failure of the carrier to provide such separate coaches or compartments makes it the duty of the conductor to enforce the provisions of the statute, and fixes a penalty against him for knowingly

failing to do so, as well as a penalty against any passenger riding in any coach or compartment not designated for his race, after having been forbidden to do so by the conductor. The latter provisions prescribing penalties against conductors and passengers for breaching the statute are incorporated in the Penal Code, and not in the Revised Statutes. The statute does not assess a pecuniary penalty against the carrier for failing to compel members of each race to ride in coaches or compartments provided for such race, but the only penalty prescribed against the carrier is for a failure to furnish separate coaches and compartments. If the carrier furnishes the accommodations referred to, so that the races may be separated, no penalty can be recovered from it, although a passenger may subject himself to a penalty by riding where he is not entitled to, and the conductor may also be subject to a penalty for permitting him to do so.

[2, 3] It requires no citation of authorities to support the proposition that, whenever the government seeks to recover a penalty for the violation of a statute, the proof must show with a reasonable degree of certainty that the statute has been violated by the defendant from whom the penalty is sought to be recovered. So in this case the burden rested upon the state to show that on the occasion referred to the defendant, while operating the train in question within the borders of this state, failed to provide separate coaches or compartments for the accommodation of the white and negro passengers, equal in all points of comfort and convenience. The record fails to show a discharge of that burden. The proof that white and negro passengers occupied together a particular Pullman coach was not sufficient to show that the other sleeping coaches in the train were not so arranged and marked and designated as to provide separate accommodations of equal comfort and convenience for each of the two races.

[4] It is contended by counsel for the railway company, not denied by counsel for the state, and seems to be held by the weight of authority that statutes providing for the separation of the two races have no application to the rights of interstate passengers; and therefore it would seem that on the occasion in question neither the defendant nor the conductor in charge of its train had any right to compel the colored passengers to leave the coach in which they were riding and go into another, even though equal in point of comfort and convenience. Hall v. De Cuir, 95 U. S. 485, 24 L. Ed. 547; McCabe v. Railway, 186 Fed. 966, 109 C. C. A. 110; Thompkins v. M., K. & T. Ry., 211 Fed. 391, 128 C. C. A. 1, 52 L. R. A. (N. S.) 791; State ex rel. Abbott v. Hicks, 44 La. Ann. 770, 11 South. 74; Hart v. State, 100 Md. 595, 60 Atl. 457; Anderson v. L. & N. Ry. (C. C.) 62 Fed. 46.

[5, 6] But, if it be conceded that the defendant's conductor had such authority, his fail-

ure to exercise it might subject him to a penalty, but would not render the defendant liable. So, if it be conceded that the statute under consideration was intended to apply to Pullman coaches, then in order for the state to recover a penalty it should have been shown that the other Pullman coaches in the train referred to were not equipped in the manner prescribed by the statute. If the Pullman and day coaches were so equipped, then no penalty could be recovered from the defendant company. The defendant, without making any proof concerning the other coaches, showed that the day coaches were equipped in the manner prescribed by the statute; but in this proceeding to recover a penalty we do not feel authorized, from the fact that it made that proof and made no proof as to the condition of the other sleeping cars, to infer that the latter were not so equipped. The burden rested upon the state to make that proof, and we do not feel justified in holding that that burden was shifted to the defendants to show compliance with the statute in reference to such other coaches.

[7] If on the occasion here involved the train contained other Pullman cars equipped, designated, and marked as required by the statute sufficient to accommodate the public, then the fact that Pullman car No. 3197 was not so equipped, designated, and marked would not render the defendant liable for the statutory penalty, even if it did not have the right to ignore the statute as to interstate traffic, as held by some of the cases cited above. But there is another feature of this case.

In Commonwealth v. Illinois Cent. Ry. Co., 141 Ky. 502, 133 S. W. 1158, 32 L. R. A. (N. S.) 801, the Supreme Court of Kentucky in construing a statute quite similar to ours, made the following rulings:

"A Pullman sleeping car controlled wholly by servants of the Pullman Company, and the fares in which were exclusively received by that company, where it does not appear that the carrier was paid anything by the Pullman Company for handling the sleeper, the only benefit it presumably derived therefor being the inducement for an increased travel, was not operated by the carrier to whom it was delivered for transportation within Kentucky Statutes, § 795 (Russell's St. § 5343), and the carrier, not being required to furnish sleeping cars under the act, was not liable thereunder for hauling the sleeper which contained no separate compartments for white and colored passengers or for failure to require a colored passenger therein to enter the compartment of the separate day coach set aside for his race, where he had provided himself before reaching the state with a ticket entitling him to ride in the sleeper, and was a passenger thereof when the sleeper was attached to the carrier's train, and also held a ticket entitling him to be carried through the state upon the carrier's train to which the sleeper was attached. The carrier, having furnished day coaches with the prescribed separate compartments for the white and colored races, and having properly labeled them, even if it were the duty of the conductor of the train to require the colored person to leave the sleeper and take the colored compartment in the day coach, would not be liable under Kentucky Statutes, § 795 (Russell's St. § 5343), for his failure to do so; such failure being an offense of the conductor."

The instant case is quite similar to the one dealt with by the Kentucky court; and, if it were necessary to so decide in order to support the judgment, we are strongly inclined to the view that our statute should be given the same construction, and that it should be held upon a similar state of facts, as was held in that case, that the railroad company was not operating the Pullman sleeping car within the purview of the statute. In this case whether or not the penalty could be recovered from the Pullman Company is not involved, and we express no opinion upon it.

After due consideration of the case, in the light of able briefs filed by counsel representing the respective parties, our conclusion is that the trial court rendered the proper judgment, which should be affirmed; and it is so ordered.

Affirmed.