# LOUISVILLE, NEW ORLEANS AND TEXAS RAILWAY COMPANY *v.* MISSISSIPPI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 1195. Submitted January 10, 1890. — Decided March 3, 1890.

The statute of the State of Mississippi of March 2, 1888, requiring all railroads carrying passengers in that State (other than street railroads) to provide equal, but separate, accommodations for the white and colored races, having been construed by the Supreme Court of the State to apply solely to commerce within the State, does no violation to the commerce clause of the Constitution of the United States.

The construction of a state statute by the highest court of the State is accepted as conclusive in this court.

THE case is stated in the opinion.

*Mr. W. P. Harris* for plaintiff in error.

The defendant in error submitted on the record.

Mr. Justice Brewer delivered the opinion of the court.

The question presented is as to the validity of an act passed by the legislature of the State of Mississippi on the 2d of March, 1888. That act is as follows:

"Sec. 1. *Be it enacted*, That all railroads carrying passengers in this State (other than street railroads) shall provide equal, but separate, accommodation for the white and colored races, by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition, so as to secure separate accommodations.

"Sec. 2. That the conductors of such passenger trains shall have power, and are hereby required, to assign each passenger to the car or the compartment of a car (when it is divided by a partition) used for the race to which said passenger belongs; and that, should any passenger refuse to occupy the car to which he or she is assigned by such conductor, said conductor shall have power to refuse to carry such passenger on his train, and neither he nor the railroad company shall be liable for any damages in any event in this State.

"Sec. 3. That all railroad companies that shall refuse or neglect within sixty days after the approval of this act to comply with the requirements of section one of this act, shall be deemed guilty of a misdemeanor, and shall, upon conviction in a court of competent jurisdiction, be fined not more than five hundred dollars; and any conductor that shall neglect to, or refuse to, carry out the provisions of this act shall, upon conviction, be fined not less than twenty-five nor more than fifty dollars for each offence.

"Sec. 4. That all acts and parts of acts in conflict with this act be, and the same are hereby repealed, and this act to take effect and be in force from and after its passage." Acts of 1888, p. 48.

The plaintiff in error was indicted for a violation of that statute. A conviction in the trial court was sustained in the Supreme Court, and from its judgment this case is here on

error. The question is whether the act is a regulation of interstate commerce and therefore beyond the power of the State; and the cases of *Hall* v. *DeCuir*, 95. U. S. 485, and *Wabash, St. Louis &c. Railway* v. *Illinois*, 118 U. S. 557, are specially relied on by plaintiff in error.

It will be observed that this indictment was against the company for the violation of section one, in not providing separate accommodations for the two races; and not against a conductor for a violation of section two, in failing to assign each passenger to his separate compartment. It will also be observed that this is not a civil action brought by an individual to recover damages for being compelled to occupy one particular compartment, or prevented from riding on the train; and hence there is no question of personal insult or alleged violation of personal rights. The question is limited to the power of the State to compel railroad companies to provide, within the State, separate accommodations for the two races. Whether such accommodation is to be a matter of choice or compulsion does not enter into this case. The case of *Hall* v. *DeCuir, supra,* was a civil action to recover damages from the owner of a steamboat for refusing to the plaintiff, a person of color, accommodations in the cabin specially set apart for white persons; and the validity of a statute of the State of Louisiana, prohibiting discrimination on account of color, and giving a right of action to the party injured for the violation thereof, was a question for consideration. The steamboat was engaged in interstate commerce, but the plaintiff only sought transportation from one point to another in the State. This court held that statute, so far as applicable to the facts in that case, to be invalid. That decision is invoked here; but there is this marked difference. The Supreme Court of the State of Louisiana held that the act applied to interstate carriers, and required them, when they came within the limits of the State, to receive colored passengers into the cabin set apart for white persons. This court, accepting that construction as conclusive, held that the act was a regulation of interstate commerce, and therefore beyond the power of the State. The Chief Justice, speaking for the court, said: "For the purposes of this case

we must treat the act of Louisiana of February 23, 1869, as requiring those engaged in interstate commerce to give all persons travelling in that State, upon the public conveyances employed in such business, equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color. Such was the construction given to that act in the courts below, and it is conclusive upon us as the construction of a state law by the state courts. It is with this provision of the statute alone that we have to deal. We have nothing whatever to do with it as a regulation of internal commerce, or as affecting anything else than commerce among the States." And again : " But we think that it may safely be said that state legislation which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress. The statute now under consideration, in our opinion, occupies that position. It does not act upon the business through the local instruments to be employed after coming within the State, but directly upon the business as it comes into the State from without or goes out from within. While it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. His disposition of passengers taken up and put down within the State, or taken up within to be carried without, cannot but affect in a greater or less degree those taken up without and brought within, and sometimes those taken up and put down without. A passenger in the cabin set apart for the use of whites without the State must, when the boat comes within, share the accommodations of that cabin with such colored persons as may come on board afterwards, if the law is enforced."

So the decision was by its terms carefully limited to those cases in which the law practically interfered with interstate commerce. Obviously whether interstate passengers of one race should, in any portion of their journey, be compelled to share their cabin accommodations with passengers of another race, was a question of interstate commerce, and to be deter-

mined by Congress alone. In this case, the Supreme Court of Mississippi held that the statute applied solely to commerce within the State; and that construction being the construction of the statute of the State by its highest court, must be accepted as conclusive here. If it be a matter respecting wholly commerce within a State, and not interfering with commerce between the States, then, obviously, there is no violation of the commerce clause of the Federal Constitution. Counsel for plaintiff in error strenuously insists that it does affect and regulate interstate commerce, but this contention cannot be sustained.

So far as the first section is concerned, (and it is with that alone we have to do,) its provisions are fully complied with when to trains within the State is attached a separate car for colored passengers. This may cause an extra expense to the railroad company; but not more so than state statutes requiring certain accommodations at depots, compelling trains to stop at crossings of other railroads, and a multitude of other matters confessedly within the power of the State.

No question arises under this section, as to the power of the State to separate in different compartments interstate passengers, or to affect, in any manner, the privileges and rights of such passengers. All that we can consider is, whether the State has the power to require that railroad trains within her limits shall have separate accommodations for the two races. That affecting only commerce within the State is no invasion of the powers given to Congress by the commerce clause.

In the case of *Wabash Railway Co.* v. *Illinois, supra,* Mr. Justice Miller, speaking for the court, said: "If the Illinois statute could be construed to apply exclusively to contracts for a carriage which begins and ends within the State, disconnected from a continuous transportation through or into other States, there does not seem to be any difficulty in holding it to be valid. For instance, a contract might be made to carry goods for a certain price from Cairo to Chicago, or from Chicago to Alton. The charges for these might be within the competency of the Illinois legislature to regulate. The

reason for this is that both the charge and the actual transportation in such cases are exclusively confined to the limits of the territory of the State, and is not commerce among the States; or interstate commerce, but is exclusively commerce within the State. So far, therefore, as this class of transportation, as an element of commerce, is affected by the statute under consideration, it is not subject to the constitutional provision concerning commerce among the States. It has often been held in this court, and there can be no doubt about it, that there is a commerce wholly within the State, which is not subject to the constitutional provision, and the distinction between commerce among the States and the other class of commerce between the citizens of a single State, and conducted within its limits exclusively, is one which has been fully recognized in this court, although it may not be always easy, where the lines of these classes approach each other, to distinguish between the one and the other. *The Daniel Ball,* 10 Wall. 557; *Hall* v. *DeCuir,* 95 U. S. 485; *Telegraph Co.* v. *Texas,* 105 U. S. 460."

The statute in this case, as settled by the Supreme Court of the State of Mississippi, affects only such commerce within the State, and comes, therefore, within the principles thus laid down. It comes also within the opinion of this court in the case of *Stone* v. *Farmers' Loan and Trust Co.,* 116 U. S. 307.

We see no error in the ruling of the Supreme Court of the State of Mississippi, and its judgment is, therefore,

*Affirmed.*

Mr. Justice Harlan dissenting.

The defendant, the Louisville, New Orleans and Texas Railroad Company, owns and operates a continuous line of railroad from Memphis to New Orleans. If one of its passenger trains —starting, for instance, from Memphis to go to New Orleans — enters the territory of Mississippi, without having cars attached to it for the separate accommodation of the white and black races, the company and the conductor of such train are

liable to be fined as prescribed in the statute, the validity of which is here in question. In other words, it is made an offence against the State of Mississippi if a railroad company engaged in interstate commerce shall presume to send one of its trains into or through that State without such arrangement of its cars as will secure separate accommodations for both races.

In *Hall* v. *DeCuir*, 95 U. S. 485, 488, this court declared unconstitutional and void, as a regulation of interstate commerce, an act of the Louisiana legislature which required those engaged in interstate commerce to give all persons travelling in that State, upon the public conveyances employed in such business, equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color. The court, speaking by Chief Justice Waite, said: "We think it may safely be said that state legislation which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress. The statute now under consideration, in our opinion, occupies that position. It does not act upon the business through the local instruments to be employed after coming within the State, but directly upon the business as it comes into the State from without, or goes out from within. While it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. His disposition of passengers taken up and put down within the State, or taken up within to be carried without, cannot but affect in greater or less degree those taken up without and brought within, and sometimes those taken up and put down without. A passenger in the cabin set apart for the use of whites without the State must, when the boat comes within, share the accommodations of that cabin with such colored persons as may come on board afterwards, if the law is enforced. It was to meet just such a case that the commercial clause in the Constitution was adopted. The river Mississippi passes through or along the borders of ten different States, and its tributaries reach many

more. The commerce upon these waters is immense, and its regulation clearly a matter of national concern. If each State was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each State could provide for its own passengers and regulate the transportation of its own freight regardless of the interests of others. Nay, more, it could prescribe rules by which the carrier must be governed within the State in respect to passengers and property brought from without. On one side of the river or its tributaries he might be required to observe one set of rules, and on the other another. Commerce cannot flourish in the midst of such embarrassments. No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a state line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate. Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity in his business, and to secure it Congress, which is untrammelled by state lines, has been invested with the exclusive legislative power of determining what such regulations shall be."

It seems to me that those observations are entirely pertinent to the case before us. In its application to passengers on vessels engaged in interstate commerce, the Louisiana enactment forbade the separation of the white and black races while such vessels were within the limits of that State. The Mississippi statute, in its application to passengers on railroad trains employed in interstate commerce, requires such separation of races, while those trains are within that State. I am unable to perceive how the former is a regulation of interstate commerce, and the other is not. It is difficult to understand how a state enactment, requiring the separation of the white and black races on interstate carriers of passengers, is a regulation of commerce among the States, while a similar enactment forbidding such separation is not a regulation of that character.

Without considering other grounds upon which, in my judgment, the statute in question might properly be held to be

repugnant to the Constitution of the United States, I dissent from the opinion and judgment in this case upon the ground that the statute of Mississippi is, within the decision in *Hall* v. *DeCuir*, a regulation of commerce among the States, and is, therefore, void.

I am authorized by Mr. Justice Bradley to say that, in his opinion, the statute of Mississippi is void as a regulation of interstate commerce.