# SOUTH COVINGTON & CINCINNATI STREET RAILWAY COMPANY *v.* COMMONWEALTH OF KENTUCKY.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 252.   Argued March 18, 19, 1920.—Decided April 19, 1920.

A state law requiring interurban railroad companies to supply separate cars or compartments for white and colored passengers, and punishing failure to do so, is not an unconstitutional burden on interstate commerce as applied to such a railroad, owned by a local corporation and lying wholly within such State, while in control of an allied street car company and in practice operated as part of a street-car system over which the cars are run to and from a city in another State (where such separation of races is illegal) and passengers are

carried through to destination without change for a single fare, those traveling interstate greatly exceeding in number those traveling wholly within the State making the requirement. P. 403.

181 Kentucky, 449, affirmed.

THE case is stated in the opinion.

*Mr. Alfred C. Cassatt*, with whom *Mr. J. C. W. Beckham, Mr. Richard P. Ernst* and *Mr. Frank W. Cottle* were on the briefs, for plaintiff in error.

*Mr. Stephens L. Blakely*, with whom *Mr. Chas. I. Dawson*, Attorney General of the Commonwealth of Kentucky, was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The Railway Company was indicted for a violation of a statute of Kentucky which required companies or persons running or operating railroads in the State, to furnish separate coaches or cars for white and colored passengers.

The statute, as far as we are concerned with it, is as follows: all corporations, companies or persons "engaged in running or operating any of the railroads of this State, either in part or whole, either in their own name or that of others, are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach within the meaning of this act, and each separate coach or compartment shall bear in some conspicuous place appropriate words in plain letters indicating the race for which it is set apart." [Ky. Stats., § 795.]

It is also provided that there shall be no difference or discrimination in the quality of the coaches or cars. A violation of the act is made a misdemeanor.

Interurban electric railroads are subject to the above provisions. We may say in passing that the railway company denies that it is interurban, but admits that the fact has been decided against it and accepts the ruling. It will be considered, therefore, as interurban and being so it was within the law and the charge of the indictment. The charge is that the company at the time designated "then and there had authority and was authorized to operate a line of railroad ten miles in length between Covington and Erlanger, and beyond, through and by means of its control, ownership and lease of and from the Cincinnati, Covington and Erlanger Railway Company, a corporation organized under the laws of the Commonwealth of Kentucky, an interurban railroad company authorized to construct and operate an electric railroad ten miles in length in this County between Covington and Erlanger and beyond, and incorporated under the general railroad laws of this Commonwealth, said defendant then and there operating said line of railroad, the construction of which by the Cincinnati, Covington and Erlanger Railway Company had theretofore been authorized." And having such authority and control of the line of railroad, the company violated the law of the State by not observing its requirement as to separate coaches.

The defense to the action was, and the contention here is, not that the facts charged are not true, but that the statute so far as it is attempted to be made applicable to the company is an interference with interstate commerce, and that the defense was made in the trial court in a motion to dismiss and for a new trial and also in the Court of Appeals.

In support of the contention it is stated that the company's principal business was interstate commerce—the

carriage of passengers between Cincinnati and the Kentucky cities across the Ohio River,—that the car in question was an ordinary single truck street car solely engaged in interstate trips from Cincinnati, Ohio, through Covington, Kentucky, and a suburb about five miles distant, and that eighty per cent. of the passengers carried were interstate.

The reply made by the State, and expressed by the Court of Appeals, to the contention is that the railway company is a Kentucky corporation and by its charter was given authority "to construct, operate and manage street railways in the City of Covington and vicinity"; "and along such streets and public highways in the city as the council shall grant the right of way to"; "and along such roads or streets out of the city as the companies or corporations owning the same may cede the right to the use of." And further "it may at any time, by agreement, purchase, lease, consolidate with, acquire, hold or operate any other street railway, or intersect therein, in Covington, Cincinnati, Newport or vicinity," etc.

The Court of Appeals further declared that the railway company became in some way the owner of all of the stocks of the Cincinnati, Covington and Erlanger Railway Company, and that the corporations are operated under the same general management, and "that the elder corporation operating in the name of the junior, actually constructed its road, and has been operating it from the beginning, being the owner of the cars, which are operated upon the road. The motive power is electricity and is the property of the elder corporation. The cars operated upon the road are such as are ordinarily used upon street railroads, and such as the elder corporation uses upon the street railroads of its system. A fare of five cents is charged for passage from any point upon the road of the Cincinnati, Covington and Erlanger Company, to any point on the system of the South Covington and Cincin-

nati Street Railway Company and from one point to another upon the entire system of the latter company, and transfers are given for all connecting lines. Many persons, who take passage upon the line of the Cincinnati, Covington and Erlanger Railway Company, at its terminus, near Erlanger and at other places along its line, are transported without change of cars, into Cincinnati, in the State of Ohio, as it connects with the lines of the South Covington and Cincinnati Street Railway Company, at its terminus, in the City of Covington." Separate coaches were not provided as required by the law.

These being the facts the Court of Appeals decided that there was no interference with or regulation of interstate commerce. "Each of the termini," the court said, "as well as all the stations of the Cincinnati, Covington and Erlanger Railway Company's road is within the State of Kentucky." And it was concluded that "the offense charged and for which the" railway was "convicted was the operation of the railroad, in an unlawful manner, within the State, and in violation of one of the measures enacted under the police powers of the State."

In answer and in resistance to the conclusion of the court, the railway company contends that it operates a railway between designated termini, one being in Kentucky and the other in Ohio, that the price of a fare may be the single one of five cents for the complete trip in the same coach taken at or terminating at the respective termini, and that therefore the car and passenger are necessarily interstate. Thus viewed they undoubtedly are, but there are other considerations. There was a distinct operation in Kentucky,—an operation authorized and required by the charters of the companies, and it is that operation the act in question regulates, and does no more, and therefore is not a regulation of interstate commerce. This is the effect of the ruling in *South Covington & Cincinnati Street Ry. Co.* v. *Covington*, 235 U. S. 537. The

regulation of the act affects interstate business incidentally and does not subject it to unreasonable demands.

The cited case points out the equal necessity, under our system of government, to preserve the power of the States within their sovereignties as to prevent the power from intrusive exercise within the National sovereignty, and an interurban railroad company deriving its powers from the State, and subject to obligations under the laws of the State, should not be permitted to exercise the powers given by the State, and escape its obligations to the State under the circumstances presented by this record, by running its coaches beyond the state lines. But we need not extend the discussion. The cited case expresses the principle of decision and marks the limitation upon the power of a State and when its legislation is or is not an interference with interstate commerce. And regarding its principle, we think, as we have said, the act in controversy does not transcend that limitation.

*Judgment affirmed.*

MR. JUSTICE DAY, dissenting.

If the statute of the State of Kentucky, here involved, as enforced by the decision under review imposes an unreasonable burden upon interstate commerce, the conviction should be reversed. To determine this question it is necessary to have in mind precisely what the charge was, and the nature of the traffic to which it was applied. The South Covington & Cincinnati Street Railway Company was charged with the offense of unlawfully running and operating a coach or car by electricity on a railroad track within the State of Kentucky, without causing or having a separate coach for the transportation of white and colored passengers on its said line of railroad to bear in some conspicuous place appropriate words in plain letters indicating the race for which it was set apart, and without having its coach or car divided by a good and substantial

wooden partition, or other partition, dividing the same into compartments with a door therein, and each separate compartment bearing in some conspicuous place appropriate words in plain letters indicating the race for which it was set apart.

There is no conflict of testimony, and the record shows that the Company was engaged in the operation of a street railway system whose principal business was interstate commerce, carrying passengers between Cincinnati and Kentucky cities across the Ohio River; that the car in question, described in the indictment, was an ordinary single truck street car seating thirty-two passengers, about twenty-one feet in length, inside measurement, solely engaged in interstate trips from Cincinnati, Ohio, through Covington, Kentucky, and well-populated territory adjacent thereto, to a point near Fort Mitchell, a suburb, about five miles distant. Eighty per cent. of the passengers carried were interstate. Not to exceed 6 per cent. of the passengers carried at any time were colored and on a large proportion of the trips no colored passengers were carried.

The question for determination is: Whether under such circumstances the requirement of the statute of the State of Kentucky that railroad companies doing business in that State shall be required to furnish separate coaches and cars for the travel or transportation of white and colored persons or cars with compartments, as described in the indictment, is constitutional? The nature of the traffic of the South Covington & Cincinnati Street Railway Company was considered by this court in *South Covington & Cincinnati Street Ry. Co. v. Covington*, 235 U. S. 537, and we held that the traffic between Kentucky and Ohio on the same cars, under the same management, and for a single fare constituted interstate commerce. (See 235 U. S. 545, and cases cited.) In that case we held that an ordinance of the City of Covington, which under-

took to determine the number of cars and passengers to be
carried in interstate transportation was invalid as a bur-
den upon interstate commerce; and that, as to certain
regulations affecting the safety and welfare of passengers,
the ordinance was valid until Congress saw fit to regulate
the interstate transportation involved.

It is true that a portion of the transportation involved in
the present case is over the track of a railroad company
organized under the laws of Kentucky. But that road had
no cars, conducted no railroad operations, and its stock
was owned and it was operated by the South Covington &
Cincinnati Street Railway Company. The car, for which
the indictment was returned, and the conviction had, was
operated only in interstate traffic, and, whether over one
road or the other, such operation was interstate commerce,
and plainly within the authority of Congress. In the
absence of congressional regulation the State had power
to make reasonable rules, not burdening interstate com-
merce, which should be enforced until Congress otherwise
enacted.

The question in this case then is: Was the application of
this statute a reasonable regulation? The traffic consists
in running a single car, of the character already described,
from Fountain Square, Cincinnati, a distance of about six
miles, to Fort Mitchell, a suburb of South Covington, Ken-
tucky. How could this separate car or compartment stat-
ute be complied with? It is first suggested a separate car
could be put on for the accommodation of colored passen-
gers for the distance of the intrastate run on the Kentucky
side of the river. In view of the nature of the transporta-
tion and the meagre patronage compared with the expense
of such an undertaking, this method would be impracticable
without interrupting travel and entailing a great loss upon
the Company. Secondly, it is suggested, and this seems to
be the weight of the argument, that cars could be con-
structed with a separate compartment for the few colored

399.    DAY, VAN DEVANTER and PITNEY, JJ., dissenting.

persons who ride in the car after it reaches or before it leaves Kentucky. It is admitted that this regulation would not apply to interstate passengers, and colored passengers going from Kentucky to Cincinnati, or going from Cincinnati to Kentucky on a through trip, would not be subject to the regulation. The few colored passengers traveling exclusively in the State of Kentucky in this car would thus be discriminated against by reason of the different privilege accorded to other colored passengers on the same car, a condition not likely to promote the peace or public welfare.

As this transportation is also subject to regulation in the State of Ohio (see § 12940, Ohio Gen. Code) and as by the laws of that State no such separation of passengers is permitted, it follows that upon the same trip the traffic would be the subject of conflicting regulations, calculated to be destructive of the public policy which it is supposed to be the design of this statute to promote; a condition which we said in *South Covington Street Railway Case*, *supra*, would breed confusion greatly to the detriment of interstate traffic.

This case is quite different from *Chesapeake & Ohio Ry. Co.* v. *Kentucky*, 179 U. S. 388, in which the statute now under consideration was before the court, and wherein it was held that the law was valid when applied to a carrier operating an interstate road. The act was held to be separable, and capable of being complied with within the State by attaching a car for passengers traveling only within the State. That case presented quite a different situation from the operation of the single street car here involved.

The present indictment is for running an ordinary street car upon an interstate journey of only about six miles, with 80 per cent. of its travel interstate, and not over 6 per cent. of the passengers colored, and on many trips no colored passengers at all. As we have indicated, the attachment of the additional car upon the Kentucky side on so short a

journey would burden interstate commerce as to cost and in the practical operation of the traffic. The provision for a separate compartment for the use of only intrastate colored passengers would lead to confusion and discrimination. The same interstate transportation would be subject to conflicting regulation in the two States in which it is conducted.

It seems to me that the statute in question as applied to the traffic here involved is an unreasonable regulation and burdensome to interstate commerce, and, therefore, beyond the power of the State. I think the judgment should be reversed.

MR. JUSTICE VAN DEVANTER and MR. JUSTICE PITNEY concur in this dissent.