### WASHINGTON, B. & A. ELECTRIC R. CO. v. WALLER.

(Court of Appeals of District of Columbia. Submitted November 8, 1922. Decided May 7, 1923.)

No. 3759.

1. **Commerce** ⬅47—**Passenger on intrastate car, with ticket for District of Columbia, though obliged to change cars, is interstate passenger.**

  A passenger on an electric railroad car, who had a ticket from Annapolis to Washington, was an interstate passenger, though the car on which he was riding was destined only to Baltimore, and he would have to change to a Washington car at a junction point.

2. **Commerce** ⬅8(12)—**State law does not affect interstate passenger.**

  The Maryland statute (Laws 1908, c. 248), requiring segregation of the races in passenger coaches, is not applicable to an interstate passenger riding in a coach within the state.

3. **Carriers** ⬅359—**Eviction of colored interstate passenger justified only by proof of existence of reasonable segregation regulation.**

  To justify the eviction of a colored interstate passenger for his refusal to occupy a seat in that part of an interurban electric car set apart for

colored passengers, it is incumbent on the carrier to show that it had in force a regulation requiring the segregation on its trains of white and colored passengers and that such regulation was reasonable.

4. **Carriers ☜267—Bulletin announcing state law as to segregation of races held not regulation affecting interstate passengers.**

A bulletin issued by a carrier engaged in both intrastate and interstate carriage of passengers, announcing the enactment of a state statute requiring the segregation of races, declaring the statute applied only to intrastate passengers and requiring its enforcement on trains which carry passengers to which the law does apply, was not by its terms a valid regulation for the segregation of interstate passengers according to race.

5. **Carriers ☜267, 359—Oral instructions to conductor to segregate races held not regulation binding on interstate passenger.**

Oral instructions by a carrier to its conductors to segregate interstate passengers by races is not a valid regulation binding on the passengers, since knowledge of such regulation should be brought home to the passenger at least constructively before he enters the car, and therefore such regulation would not justify the eviction of a colored passenger, who refused to move to the seat designated by the conductor, especially where such passenger had ridden in another car on the same day, in violation of the alleged regulation.

Appeal from the Supreme Court of District of Columbia.

Action by William A. Waller against the Washington, Baltimore & Annapolis Electric Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thomas P. Littlepage and Sidney F. Taliaferro, both of Washington, D. C., for appellant.

Raymond Neudecker, James J. O'Leary, and James A. Cobb, all of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal from the judgment of the Supreme Court of the District, wherein upon a verdict of the jury damages were awarded Waller, plaintiff below.

The appellant here, defendant below, is an electric common carrier between Washington, D. C., Baltimore, Md., and Annapolis, Md. Its railroad traverses a section of Maryland. The plaintiff, a colored man, testified in substance that he purchased a round-trip ticket (of defendant) from Washington to Annapolis, upon which he rode in a car on one of appellant's trains, sitting about midway of the car, in which there were colored people sitting in the front of the car. At about 11 o'clock p. m. of the same day, at Annapolis, after showing the train conductor his ticket, he entered a car of appellant's train with the intention of returning to Washington. That train was bound from Annapolis to Baltimore, a trip wholly within the state of Maryland, and in order to go to Washington it would be necessary for appellee to take another of appellant's trains at some point between Annapolis and Baltimore. He took a seat in the forward end of the car. After the train had proceeded a short distance from Annapolis, and before reaching the point where it would be necessary for appellee to change

cars, the train conductor took a coupon from his ticket, handed the remainder back to him, and told him that he would have to move back to the two rear seats of the car, as required by the rules of the company and the laws of Maryland. The appellee did not immediately comply with this direction, and soon after the conductor again requested him to move back into the rear seats. This appellee refused to do, saying he had a ticket for Washington. Thereupon the conductor told him he would either have to move back or get off, and, the appellee still refusing to get off, the conductor stopped the train and evicted him.

There is some controversy as to just what occurred between the conductor and the appellee, but we think the record as a whole shows that the foregoing is substantially correct. It does not appear that there was any unnecessary force used in evicting the appellee from the car. The eviction was accomplished at a station called Best Gate in the state of Maryland, about midnight, and appellee was compelled to remain there until some time in the morning. His action was to recover for actual damages arising out of this eviction, which he claimed to be unlawful, and for his mental and physical suffering occasioned thereby.

The appellant admitted the eviction, but sought to justify it under a plea that it was legal, because a statute of the state of Maryland (Laws 1908, c. 248) authorized and required appellant to keep separate white and colored passengers, and also that its regulations required such segregation.

[1, 2] We think that the appellee was an interstate passenger, and that the Maryland statute requiring segregation of white and colored passengers was not applicable to him. The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; So. Pac. Ry. Co. v. I. C. C., 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310; R. R. Comm. of La. v. T. & P. Ry. Co., 229 U. S. 336, 33 Sup. Ct. 837, 57 L. Ed. 1215; Chiles v. C. & O. R. R. Co., 218 U. S. 71, 30 Sup. Ct. 667, 54 L. Ed. 936, 20 Ann. Cas. 980; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Hall v. De Cuir, 95 U. S. 485, 24 L. Ed. 547; Railway Co. v. Mississippi, 133 U. S. 587, 10 Sup. Ct. 348, 33 L. Ed. 784.

In Hart v. State of Maryland, 100 Md. 595, 60 Atl. 457, the court made an exhaustive examination of the authorities, state and federal, and in an able opinion concluded that a Maryland statute apparently enacted prior to the one invoked here, but of similar import, providing for the segregation of white and colored passengers, while valid so far as it affected commerce wholly within the state, was invalid as to interstate passengers, as in conflict with that part of article 1, section 8, of the Constitution of the United States, known as the commerce clause.

[3] The appellant also relies upon the right of a common carrier, independent of any statute, to make regulations for the segregation of white and colored passengers, whether interstate or intrastate, claiming that it had such a regulation in force at the time the eviction took place. In the absence of any federal statute regulating the carrying of interstate passengers, it seems the appellant has by law authority

to regulate such traffic in a reasonable manner. Chiles v. Chesapeake & Ohio Ry. Co., supra; Hall v. De Cuir, supra; Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256; Railway Co. v. Mississippi, supra.

In Plessy v. Ferguson, which involved a Louisiana statute providing for the segregation of the white and colored races within the state, it was held that such a statute, if reasonable, was valid, and that in determining the question of reasonableness the Legislature was "at liberty to act with reference to the established usages, customs, and traditions of the people, and with a view to the promotion of their comfort and the preservation of the public peace and good order."

In Chiles v. Chesapeake & Ohio Ry. Co., the same test was held applicable to the rules and regulations of the defendant there which required white and colored passengers to be segregated, and further that "regulations which are induced by the general sentiment of the community for whom they are made and upon whom they operate cannot be said to be unreasonable." See, in this connection, Chesapeake & Ohio Ry. Co. v. Kentucky, 179 U. S. 388, 21 Sup. Ct. 101, 45 L. Ed. 244.

In none of the cases to which we have been referred is any question made as to the existence of the rule or regulation requiring such segregation. In the case at bar, however, the existence of such a rule or regulation is challenged. It was, of course, necessary for the defendant below to show that it had in force a regulation requiring the segregation of colored people traveling on its trains, and that it was reasonable; otherwise, there was no justification for the eviction of the plaintiff below.

[4] For this purpose it offered in evidence its bulletin No. 502, dated September 15, 1915, signed by its trainmaster, the material part of which we quote:

"To All Conductors:

"An act passed by the General Assembly of the state of Maryland in 1908 requires us to designate separate seats in our passenger coaches for white and colored passengers. This law does not apply to what are known as interstate passengers; i. e., passengers traveling from the state of Maryland into the District of Columbia, or vice versa. It does, however, apply to all passengers boarding and alighting from our trains at any points in the state of Maryland, and our line operates in the state of Maryland from Baltimore to the District of Columbia line, including the A., W. & B. Division.

"Therefore, when you are in charge of trains which carry passengers to which this law applies, you will start loading colored passengers in the rear seats and white passengers in the forward seats. On all passenger coaches this rule will apply in both the smoking and passenger compartments, and on combination coaches the same rule will apply in the passenger compartment; but in the smoking compartment, where there are only four seats, you will request the colored passengers to occupy one side of the smoking compartment and the white passengers the other side. * * * A complete copy of the law is attached for your full information and guidance."

To this was attached a copy of the statute referred to, which it is unnecessary to consider. This bulletin was excluded by the court below on the ground, as we understand, that it did not tend to establish a regulation as to the segregation of interstate passengers.

We agree with this view. In terms it was limited to "passengers to which this law applies," and the bulletin expressly stated that the law did not apply to interstate "passengers traveling from the state of Maryland into the District of Columbia or vice versa."

The record shows that, when the plaintiff below was directed by the conductor to remove to the rear of the car, the latter had seen his ticket, torn off the coupon entitling him to ride to the junction where the change for Washington would be made, handed back to him the remainder of the ticket, and in addition was told by plaintiff that his ticket was to Washington. The plaintiff below was not within the terms of the bulletin regarded as a regulation. The conductor was presumed to know that fact, and the eviction could not be justified thereunder.

It appeared that the train conductor entered upon such employment about 1912. The defendant below offered to show that he was then given instructions by another conductor, who had in turn been instructed by an assistant trainmaster, who had authority so to do, to segregate colored from white people on its trains, and that the general policy and practice of the defendant was to give such instructions, claiming in that connection that such evidence tended to establish an oral regulation of the defendant applicable to the plaintiff below, which justified his eviction. This evidence was objected to on the ground that it did not tend to establish a regulation of the company and was excluded.

It was not claimed that there was any written regulation to that effect, other than the bulletin already considered, nor was there any offer to show the source of the claimed authority of the trainmaster, or that the defendant company had by corporate action established such an oral regulation, or that it had ever taken steps to ascertain or determine whether such a regulation was in accordance with the established usages, customs, and traditions of the people of the vicinity, or would tend to promote their comfort or preserve the public peace and good order. Evidence was received tending to show that the sentiment of people served by the company was in favor of segregation, and that there was strong objection to colored people occupying the same seats in cars as white people; but there was no offer to show that the claimed oral regulation was induced thereby, or that the company or its officials were cognizant of the sentiment in favor of segregation.

[5] No authorities especially applicable are cited. We think, however, that in order to establish the existence of an oral regulation sufficient to justify the eviction here, assuming, without deciding, that if established it would constitute a defense, there should be something more than proof that instructions to segregate were given to the conductor who evicted the plaintiff below. A regulation of the character claimed, which would deprive the plaintiff as an interstate passenger of his right to sit in the front end of the car, and would justify his eviction if he declined to move when requested, must be regarded as possessing the quality of a law binding at least upon all who had knowledge thereof or to whom such knowledge might be imputed. It was not, of course, because the knowledge of its existence was, so far

as appears, confined to conductors and trainmasters, possessed of the properties of an applicable statute or of the common law, which every one is presumed to know, and there is nothing in the case that warrants the belief that, if such a regulation existed, knowledge thereof prior to his taking his seat in the car could be imputed to the plaintiff. On the contrary, he had ridden the same day to Annapolis on a car where the claimed regulation had not been enforced.

Ordinarily it would be expected that, if the defendant intended to compel a segregation of passengers upon its trains by virtue only of an oral regulation, some effort would be made to give publicity to that fact by posting notices thereof within its passenger cars, in its stations, or elsewhere on its property, so that persons to whom it applied might govern themselves accordingly, and yet nothing of that kind appears in this case. There was no offer to show that instructions as to segregation were given to all other passenger conductors employed by defendant. In the discussion between counsel and court, the latter remarked:

"Of course, it may be that, if all conductors were instructed through a series of years, that might be equivalent to a regulation."

But the record does not show any offer to make such proof. While it may be conceded that the offered evidence tended to prove an instruction which was binding upon the train conductor, as between himself and his employer, for the results of an obedience to which the employer assumed responsibility, it would, if proven, afford no justification whatever in this action against the company for the eviction of the plaintiff, and was therefore properly excluded.

The court below, therefore, rightfully concluded that no justification for the eviction had been offered or shown, and that there was nothing for the jury to consider, except the actual damages, nothing else being claimed.

The judgment below is affirmed, with costs.