

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS

ATTORNEY GENERAL

Honorable Olin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-6424
Re: Colored passengers to be permitted
to eat their meals in the dining
car separate and apart from white
passengers.

You request this department's opinion on the legality
of the practice of certain railroad companies operating in
Texas in permitting colored passengers to eat their meals in
the dining car with white passengers.

Our state, exercising its legislative wisdom to guard
the public peace and safety and under its police power, has
passed statutes with reference to the separation of its white
and colored citizens.

Revised Statutes, Article 6417 and Penal Code Articles
1659-60 are pertinent to your inquiry. The relevant provisions
of Article 6417 follows:

"1. Every railway company, street car com-
pany, and interurban railway company, lessee mana-
ger, or receiver thereof, doing business in this
State as a common carrier of passengers for hire,
shall provide separate coaches or compartments, as
hereinafter provided, for the accommodation of
white and negro passengers, which separate coach
or compartments shall be equal in all points of
comfort and convenience. (Underscoring ours)

"2. * * * * *

"3. 'Separate coach' defined. - Each compartment
of a railroad coach divided by good substantial wooden
partitions with a door therein shall be deemed a separate
coach within the meaning of this law, and each
separate coach shall bear in some conspicuous place
appropriate words in plain letters indicating the
race for which it is set apart; . . . .

"4.  * * * * *

"5.  Exceptions. - <u>This article shall not * *
* * prevent railroad companies from hauling dining
or cafe cars or chair cars attached to their
trains to be used exclusively by either race,
separately but not jointly</u>, or to prevent nurses
from traveling in any coach or compartment with
their employer, or employes upon the train or
cars in the discharge of their duty.  (Under-
scoring ours)

"6.  * * * * *

"7.  Duty of conductor. - <u>Conductors of pass-
enger trains</u>, street cars, or <u>interurban lines
provided with separate coaches shall have the au-
thority to refuse any passenger admittance to any
coach or compartment in which they are not entitled
to ride under the provisions of this law</u>, and the
conductor in charge of the train or street car or
interurban car shall have authority, and it shall
be his duty, to remove from a coach or street car,
or interurban car, any passenger not entitled to
ride therein under the provisions of this law."
(Underscoring ours)

Penal Code, Article 1659, provides in part as follows:

"1.  Every railway company, street car company
and interurban railway company, lessee, manager,
or receiver thereof doing business in this State
as a common carrier of passengers for hire <u>shall
provide separate coaches or compartments</u> for the
accommodation of white and negro passengers.  (Un-
derscoring ours)

"2.  * * * * *

"3.  'Separate coach' defined. - Each compart-
ment of a railroad coach divided by good and sub-
stantial wooden partitions with a door therein
shall be deemed a separate coach within the meaning
of this law, and each separate coach shall bear in
some conspicuous place appropriate words in plain
letters indicating the race for which it is set a-
part;  * * *

"4.  Violating separate coach law. - If any
passenger upon a train or street car or interurban

car provided with separate coaches or compartments
as above provided shall ride in any coach or com-
partment not designated for his race after having
been forbidden to do so by the conductor in charge
of the train, he shall be fined not less than five
nor more than twenty-five dollars.

"5. Duty of conductor. - Conductors of passen-
ger trains, street cars, or interurban lines provided
with separate coaches shall have the authority to re-
fuse any passenger admittance to any coach or compart-
ment in which they are not entitled to ride under
the provisions of this law, and the conductor in
charge of the train or street car or interurban car
shall have authority, and it shall be his duty, to
remove from a coach or street car, or interurban car,
any passenger not entitled to ride therein under the
provisions of this law, and upon his refusal to do
so knowingly he shall be fined not less than five
nor more than twenty-five dollars."

The provisions of Penal Code, Article 1660, are similar
with those of Section 5 of Revised Statutes, Article 6417.

As to the purpose and validity of such legislation, we
quote from our opinion No. 0-5642, approved October 20, 1943,
wherein we said:

"The purpose of such legislation, as revealed
by the emergency clause of the bill under consider-
ation, is very aptly stated by the court in the case
of Westchester & Philadelphia R. Co. v. Miles, 55
Penn. 209, 93 Am. Dec. 744:

"'.....It is not an unreasonable regulation to
seat passengers so as to preserve order and decorum
and to prevent contacts and collisions arising from
natural or well-known customary repugnances, which
are likely to breed disturbances by promiscuous sit-
ting. It is much easier to prevent difficulty among
passengers by regulation for their proper separation
than it is to quell them. The danger to the peace
engendered by a feeling of aversion between indivi-
duals of the different races cannot be denied. It
is the fact with which the company must deal. If
a negro takes a seat beside a white man, or his wife
or daughter, the law cannot repress the anger or con-
quer the aversion which some will feel. However un-
wise it may be to indulge the feeling, human infir-
mity is not always proof against it. It is much

wiser to avert the consequences of this repulsion of race by separation than to punish afterwards the breach of the peace it may have caused.'

"The principle followed by the Federal and State courts as to whether or not segregation of races contravene any constitutional provision is not the identity of the accommodation but rather the equality of the accommodation. (Citing authorities) By this, we mean the test is not whether a race or a portion of a race is separated from other races or groups thereof, but whether the accommodations offered each race or portion are reasonably equal in every respect and no undue discrimination is present. * * * The law was enacted for the protection of passengers, white and negro alike; the separation will prevent conditions most likely to provoke unlawful acts and thus ward off for both races pains of the nature of physical suffering and pains of the nature of fines. The accommodations offered both races are equal in every respect; the comforts and conveniences provided are the same notwithstanding race or color."

In South Covington & C. Street R. Co. vs. Kentucky (1919), 252 U.S. 399, p. 404, 64 L. Ed. 399, the Kentucky statute requiring separate but equal accommodations to be furnished for colored and white passengers traveling between Cincinnati, Ohio, and Kentucky cities across the Ohio river was upheld. The court said: "The regulation of the act affects interstate business incidentally, and does not subject it to unreasonable demands."

Where one was denied admission to a state school "upon the sole ground of his race" the Court in _Missouri_ Ex Rel Gaines v. Canada, 305 U.S. 337, p. 344, said:

"In answering petitioner's contention that this discrimination constituted a denial of his constitutional right, the state court has fully recognized the obligation of the State to provide negroes with advantages for higher education substantially equal to the advantages afforded to white students. The State has sought to fulfill that obligation by furnishing equal facilities in separate schools, a method the validity of which has been sustained by our decisions."

Mr. Chief Justice Hughes in Mitchell v. U.S. 313, U.S. 80, p. 94, 85 L. Ed. 1201, 61 Supreme Court Reporter, 873 P. 876, said:

"The undisputed facts showed conclusively that, having paid a first-class fare for the entire journey from Chicago to Hot Springs, and having offered to pay the proper charge for a seat which was available in the Pullman car for the trip from Memphis to Hot Springs, he was compelled, in accordance with custom, to leave that car and to ride in a second-class car and was thus denied the standard conveniences and privileges afforded to first-class passengers. This was manifestly a discrimination against him in the course of his interstate journey and admittedly that discrimination was based solely upon the fact that he was a negro. The question whether this was a discrimination forbidden by the Interstate Commerce Act is not a question of segregation but one of equality of treatment. The denial to appellant of equality of accommodations because of his race would be an invasion of a fundamental individual right which is guaranteed against state action by the Fourteenth Amendment (citing authorities) and in view of the nature of the right and of our constitutional policy it cannot be maintained that the discrimination as it was alleged was not essentially unjust. * * *" (Underscoring ours)

Shelton v. Chicago R. I. & P. R. Co., 139 Tenn. 378, 201 S.W. 521, L. R. A. 1918 D. 707, p. 708 presented a like question. The court said:

"The construction of the statute contended for by plaintiff might be so onerous on railway companies as to lead to consequences not desirable for either race, the abandonment of dining cars in certain trains, and on those railroads which would not be justified in going to the expense of maintaining separate diners, and find it impracticable to partition one of them. In this case a full-length dining car was not operated - only one half of a car was found necessary for and devoted to buffet service - and it would be quite out of the bounds of reason to subdivide this space into two compartments, as a practical proposition.

"A statute, when possible, should not be given a construction that would make it not sensible, or that would lead to manifest inconvenience, so serious as to work injustice. * * * *

"When, therefore, dining cars were introduced they were the subjects of regulation by the railroad companies as to the use to be made of them by passengers of the white and negro races, under common law power to that end.

"It appears, however, that <u>the defendant railway company had established a rule for the purpose of providing equal but separate and sufficient accommodation in its dining cars for the two races. The partition it made of the car for use was by hours during which members of the respective races might resort to the dining car for food.</u> It seems to us that this rule was not only reasonable, but that it was a wise and fair one, and perhaps the best that in the circumstances could be adopted to serve the same ends the legislature had in mind when they enacted laws in relation to separation of the races in passenger coaches. The rule of the highway company in operation was that white passengers were served first; three separate meal calls were made in the day coaches and sleepers for the white passengers. If there were any negro passengers desiring the meal, they were not served until the lapse of a reasonable time following the making of the last call, when there was no probability of other white passengers coming into the car for service. In our opinion we should not read into the statute anything that would prevent such a just regulation by the carrier, unless compelled to do so. The rule admits of railway trains maintaining schedules that are not slowed down by stops for roadside meals, and it does not lead to denial of meals to members of either race, or to reasonable inconvenience." (Underscoring ours)

We therefore answer your question as follows: It is, under Revised Statutes, 1925, Art. 6417 and Penal Code, 1925, Arts. 1659-60 (known as our Jim Crow Law) unlawful for railroads to serve whites and blacks in the same dining car at the same time. However, as held by the Tennessee Supreme Court, we can see no objection to the railroad companies using the same dining car to serve both white people and colored so long as they are served at different hours so that the dining or cafe car shall be used exclusively by either race separately, but not jointly; and the accommodations shall be equal in all points of comfort and convenience.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/David Wuntch
David Wuntch
Assistant

DW:zd:wc

APPROVED MAR 6, 1945
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman