# Staunton

## NORVELL LEE v. COMMONWEALTH OF VIRGINIA.

September 7, 1949.

Record No. 3558.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Hill, Martin & Robinson* and *Robert L. Carter*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Assistant Attorney General,* for the Commonwealth.

Spratley, J., delivered the opinion of the court.

The plaintiff in error, Norvell Lee, a young colored man, was arrested in the county of Alleghany, Virginia, on a warrant charging that on the 14th day of September, 1948, he "did unlawfully fail to take a seat assigned to him, pursuant to the segregation law of the State of Virginia, on Chesapeake & Ohio Train No. 310 against the peace and dignity of the Commonwealth of Virginia." Upon his trial he was found guilty by a trial justice and adjudged to pay a fine of five dollars and costs. He appealed to the Circuit Court of the county of Alleghany, pleaded not guilty, and waived trial by jury. With the consent of the Commonwealth and the accused, the case was heard by the trial judge. He was found guilty of the violation of Virginia Code, 1942, (Michie), section 3983, and sentenced to pay a fine of twenty-five dollars and costs. He applied for and obtained this writ of error.

The facts are without material dispute.

Lee is a student at Howard University, Washington, D. C. His home is at Eagle Rock, Virginia, about ten miles from Clifton Forge, Virginia.

The Chesapeake & Ohio Railway Company operates a passenger train known as No. 310, running only between Hot Springs, Virginia, and Clifton Forge via Covington.

Passengers on this train from Clifton Forge bound westward beyond Covington have to transfer to another train of the C. & O. at Covington. Passengers from Covington bound east of Clifton Forge have to transfer to another train of the C. & O. at Clifton Forge to complete their journey. Train No. 310 is made up of only an engine and one car or coach. At one end seats are set aside for white passengers. Next to this section there is a partition and a toilet, and the middle third is set aside for negro passengers. The other end of the coach is set aside for baggage. The entrance for all passengers is in the section of the coach set aside for white passengers.

The coach is not turned around on its travel to and from Hot Springs and Clifton Forge. On its trip from Hot Springs, the section for white passengers is next to the engine and in front of the section for colored passengers. On its return trip the situation is reversed, the white section is farthest away from the engine, and the middle section for colored passengers is in front of the white section. In the section for white passengers is a sign stating that it is set aside for white persons. The sign is so constructed that it can be turned to show that a particular section is for colored persons.

On September 13, 1948, Lee boarded this train in Clifton Forge, with a ticket entitling him to transportation to Covington, and took his seat in a section set apart for white passengers. He refused to change his seat at the request of the conductor, and rode in the white section from Clifton Forge to the end of his journey.

On the following day, September 14, 1948, Lee purchased a ticket from Covington to Clifton Forge, got on train No. 310 in Covington, and took a seat in the front section of the coach just under the sign which designated that section for white passengers. There were both white and colored passengers seated in that section at that time. The conductor of the train recognized Lee as the person who had refused his request to change seats the preceding day. He ordered the brakeman of the train to ascertain whether Lee had a

ticket and where he was seated. The brakeman found Lee sitting in the white section with a ticket to Clifton Forge, and requested him to move to the colored section. Lee refused to move and the brakeman so reported to the conductor. The conductor called the sheriff of Alleghany county, who entered the train, and told Lee that he would have to move his seat to the colored section or get off the train. Lee refused to change his seat, but got off the train. He then went to the ticket office, got a refund on his ticket to Clifton Forge, and purchased another ticket entitling him to transportation from Covington to Washington, D. C. With this ticket he got back on the train and took the seat formerly occupied by him in the white section. The sheriff, observing Lee's action, reentered the train and, without asking any question, or making any explanation, immediately placed Lee under arrest. The conductor said he did not know that Lee had purchased a ticket to Washington, and the sheriff said Lee did not exhibit any ticket to him at that time.

Lee testified that he had not planned to go to his home at Eagle Rock on September 14th; but intended to go directly to Washington that day. He said he purchased his first ticket to Clifton Forge because train No. 310 went no farther, intending, at that time, to purchase at Clifton Forge a ticket to Washington for the next eastbound train leaving Clifton Forge two hours after his arrival there, which would take him to Charlottesville, Virginia, where he would again transfer to another C. & O. train to carry him to his ultimate destination. It was necessary, by reason of the schedule of the carrier, for a passenger on train No. 310, who had a ticket from Covington to Washington to make the train changes mentioned.

The record does not disclose the rules and regulations of the carrier. In fact, nothing was said to Lee about its rules and regulations.

We are asked by appellant to reverse the judgment against him on the grounds that Virginia Code, 1942 (Michie), section 3983, as applied to him, an interstate traveller, is an

unconstitutional regulation of interstate commerce and an invalid delegation of legislative power. In the view we take of the case, it is only necessary to give consideration to the first question.

■■ We have no difficulty in finding that Lee was an interstate passenger. The interstate character of a person travelling on an interstate ticket is not affected by the fact that he begins or ends his journey·on a merely local train of an interstate carrier, where the only interruption in his journey is that made necessary by the train schedule of the carrier, requiring him to change from one of its trains to another to reach his destination. It is the character of his journey, not the character of the train which determines his status. *Chiles* v. *Chesapeake, etc., R. Co.,* 218 U. S. 71, 30 S. Ct. 667, 54 L. ed. 936, 20 Ann. Cas. 980; *Railroad Comm.* v. *Texas, etc., R. Co.,* 229 U. S. 336, 33 S. Ct. 837, 57 L. ed. 1215; *Washington B. A. Elec. R. Co.* v. *Waller,* 53 App. D. C. 200, 289 F. 598, 30 A. L. R. 50.

This case involves no question of discrimination in the quality of accommodations furnished, or of disorderly conduct or trespass on the part of the passenger, or of the right of a carrier, in the conduct of its business,·to establish reasonable rules and regulations for the separation of white and colored passengers. Here the question is whether the appellant, while travelling as an interstate passenger, on a railroad engaged in interstate commerce "did unlawfully fail to take a seat assigned to him *pursuant to the segregation law of the State of Virginia.*" (Italics supplied). The validity of the segregation law is directly brought into question.

By various legislative acts since 1900, the Commonwealth of Virginia has enacted statutes requiring the separation of white and colored passengers on public carriers. As to railroads these provisions are found in Acts 1899-1900, pages 236-7 and Acts 1902-3-4, page 987, *et seq.* (Michie's Code of Virginia, sections 3962-68, and section 3983); as to electric or street cars in Acts 1902-3-4, page 990, *et seq.* (Michie's Code of 1942, sections 3978-83); and as to motor

vehicles in Acts 1930, pages 343 and 344 (Michie's Code, sections 4097z, 4097aa, 4097bb, 4097cc, and 4097dd).

The statutes express the public policy of Virginia as to all passengers on public carriers, without any exception as to those travelling interstate. The statutes are couched in almost identical language, differing only by reason of their applicability to the character of the transportation.

Especially close is the similarity between the provisions relating to railroad and motor vehicle carriers. In the provisions in each instance, the respective carrier is required to furnish separate accommodations for white and colored passengers, subject to being guilty of a misdemeanor for failure, refusal, or neglect to comply. As to railroads see Code, sections 3962-3964. As to motor vehicle carriers see Code, section 4097z, *et seq.* On railroad coaches (Code, sections 3965 and 3983), and on motor buses (Code, sections 4097bb and 4097dd), a passenger may be required to change his or her seat at any time and from time to time as the person in charge of the vehicle may deem necessary or proper. A failure to obey the requirement is made a misdemeanor. Furthermore, the offender may be ejected from the vehicle.

The similarity of Code, section 3983, under which Lee was prosecuted, and of Code, section 4097dd, which was declared invalid as to interstate passengers on motor vehicles in *Morgan* v. *Virginia*, 328 U. S. 373, 66 S. Ct. 1050, 90 L. ed. 1317, 165 A. L. R. 574, is clearly shown in parallel columns below:

"Section 3983. All persons who fail, while on any coach or car used for the carriage of passengers for hire by any company or corporation, or person or persons, on any railway line, whether the motive power thereof be steam or elec-

"Section 4097dd. All persons who fail while on any motor vehicle carrier, to take and occupy the seat or seats or other space assigned to them by the driver, operator or other person in charge of such vehicle, or by the person whose duty it is to

tricity, or other motive power, or whether said coach or car be on a street railway or interurban railway or a steam railway, to take and occupy the seat or seats or other space assigned to them by the conductor, manager or other person in charge of such car or coach, or whose duty it is to take up tickets or collect fares from passengers therein, or who fail to obey the direction of any such conductor, manager or other person, as aforesaid, to change their seats from time to time, as occasions require, pursuant to any lawful rule, regulation or custom in force on such lines as to assigning separate seats or compartments, or other space, to white and colored passengers, respectively, being first advised of the fact of such regulation and requested to conform thereto, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five nor more than twenty-five dollars for each offense. Furthermore, such persons may be ejected from said car, and from the right of way of said company by take up tickets or collect fares from passengers therein, or who fail to obey the directions of any such driver, operator or other person in charge, as aforesaid, to change their seats from time to time as occasions require, pursuant to any lawful rule, regulation or custom in force by such lines as to assigning separate seats or other space to white and colored persons, respectively, having been first advised of the fact of such regulation and requested to conform thereto, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars for each offense. Furthermore, such persons may be ejected from such vehicle by any driver, operator or person in charge of said vehicle, or by any police officer or other conservator of the peace; and in case such persons ejected shall have paid their fares upon said vehicle, they shall not be entitled to the return of any part of same. For the refusal of any such passenger to abide by the request of the person in charge of said

any conductor, motorman or manager of said company, or by any police officer or other conservator of the peace; and in case such persons ejected shall have paid their fares upon said car, they shall not be entitled to a return of any part of the same." Acts 1910, page 335.

vehicle as aforesaid, and his consequent ejection from said vehicle, neither the driver, operator, person in charge, owner, manager nor bus company operating said vehicle shall be liable for damages in any court." Acts 1930, page 344.

*Morgan* v. *Virginia, supra,* decided upon a state of facts substantially similar to those here and under a statute almost identical, is determinative of the merits of this case. There a negro woman was travelling on a motor vehicle carrier from Gloucester, Virginia, through the District of Columbia, to Baltimore, Maryland, the destination of the bus. She took a seat in the bus set apart for white persons. The regulations of the carrier requiring segregation of white and colored persons were shown and explained to her. On her refusal to accede to a request of the driver of the bus to move to a seat in the rear of the bus, which was partly occupied by other colored passengers, a warrant was obtained and she was arrested, tried, and convicted of a violation of Virginia Code, section 4097dd. Her conviction was affirmed by this court. 184 Va. 24, 34 S. E. (2d) 491.

Upon appeal to the Supreme Court of the United States, her conviction was reversed. The Supreme Court held that, as applied to an interstate passenger, the provisions of the Virginia statute constituted a burden upon and interference with interstate commerce and was, therefore, violative of Clause 3, Section 8, Article 1 of the Federal Constitution. The Court pointed out that the provisions of the statute gave the operator of a motor vehicle authority to make an interstate passenger "repeatedly shift seats while moving in Virginia," under a local law, "to meet the requirements of the changing passenger group;" while on arrival in a State without segregation laws the passenger would have the "free-

dom to occupy any available seat" to the end of her journey; and said that the enforcement of such provisions disturbed and interfered with national uniformity in interstate travel, in that it hampered the passengers' "choice of freedom in selecting accommodations" and directly impaired the usefulness of the facilities for travel.

In *Taylor* v. *Commonwealth*, 187 Va. 214, 46 S. E. (2d) 384, the state of facts were much like those now before us. Mrs. Taylor, a negro, and an interstate passenger on a motor bus, refused to accede to the request of the operator of the vehicle that she move to a seat in the rear of the bus as required by the rules and regulations of the carrier, which were shown and explained to her. She was arrested and charged with causing an unnecessary disturbance in the bus by failing to move when requested, in violation of Virginia Code, 1942 (Michie), section 4533a, a disorderly conduct statute. We held that the mere refusal of a passenger to move her seat in accord with the rule of the carrier did not constitute disorderly conduct; but, at most, constituted a breach of the rules and regulations of the carrier.

Here the facts are that Lee was travelling as an interstate passenger on a vehicle operated by a common carrier in interstate commerce. He was sitting peaceably in a seat when he was approached by the sheriff, and placed under arrest. No request was made of him to determine whether he had purchased a ticket entitling him to travel beyond the limits of the State. No effort was made to ascertain his status as a passenger. He was guilty of no disorder. He was ejected from the train and arrested solely because he, a negro, was sitting in a place set aside by the carrier, in accordance with the Virginia statutes, for the exclusive use of white persons, and convicted upon a charge of violating "the segregation law of the State of Virginia."

The federal courts in recent years have uniformly held invalid state statutes requiring segregation of the races in interstate commerce as contrary to the Commerce Clause of the United States Constitution, and have upheld statutes requiring equality of treatment of white and colored pas-

sengers in interstate commerce as constitutional and in accord with national policy. *Matthews* v. *Southern Ry. System*, 157 F. (2d) 609; *Washington B. A. Elec. R. Co.* v. *Waller, supra; Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28, 68 S. Ct. 358, 92 L. ed. 455.

We can see no valid distinction between segregation in buses and railroad coaches. Virginia Code, section 3983 is obviously subject to the same objections which caused the Supreme Court to invalidate Code, section 4097dd. There is no reasonable legal distinction between the two sections. If one is invalid as to the segregation of the white and colored races in interstate commerce, the other is necessarily invalid to the same extent.

Accordingly, we are of opinion to reverse the judgment of the trial court and to dismiss the proceedings against the appellant.

*Reversed and final judgment.*